NEAL v FRIENDSHIP MANOR NURSING HOME

Docket No. 52880. Submitted December 14, 1981, at Detroit.—Decided March 3, 1982.

Leamon Neal, a 13-1/2-month old mentally retarded patient at Friendship Manor Nursing Home, was burned by the placing of a hot water bottle on his abdomen by a nurse at the home. He died approximately two months later from respiratory arrest and pulmonary congestion. Jo Anne Neal, Leamon's mother and administratrix of his estate, brought a wrongful death action against the nursing home in Wayne Circuit Court. Plaintiff moved for summary judgment on the issue of defendant's negligence. The court granted plaintiff's motion but preserved for trial the issues of proximate causation and damages, Victor J. Baum, J. Following trial, the jury returned a verdict in favor of plaintiff and awarded damages of $150,000 for decedent's pain and suffering and $100,000 for plaintiff's loss of society and companionship. Judgment was entered, William T. Giovan, J. Defendant appeals. *Held:*

1. The trial court's conclusion that an inference of negligence on defendant's part must necessarily be drawn because of the circumstantial evidence introduced at the hearing on the motion for summary judgment resulted in error. The trial court failed to distinguish between evidentiary facts and the inferences or conclusions to be drawn from those facts. By making the inference of defendant's negligence a conclusive one, the trial court usurped the fact-finding role of the jury ultimately

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 73 Am Jur 2d, Summary Judgment § 26.
[3] 58 Am Jur 2d, Negligence § 476.
[4] 58 Am Jur 2d, Negligence § 480.
[5] 58 Am Jur 2d, Negligence § 521.
[6] 29 Am Jur 2d, Evidence § 898.
   Admissibility of mortality tables in personal injury action as dependent upon showing of permanency of injury. 50 ALR2d 419.
[7, 8] 22 Am Jur 2d, Damages § 26.
[8] 5 Am Jur 2d, Appeal and Error § 623.
   22 Am Jur 2d, Damages §§ 345, 346.
[9] 22 Am Jur 2d, Damages § 342.

impaneled. Reversal of the trial court's grant of summary judgment and remand for a new trial on the issue of defendant's breach of duty is required.

2. Defendant's contention that the issue of proximate causation was removed from the jury's consideration by the manner in which the grant of summary judgment was phrased is without merit.

3. No error occurred by the trial court's giving instructions to the jury on the issue of damages in which the jury was informed of plaintiff's life expectancy as taken from mortality tables.

4. No manifest injustice resulted from the failure of the trial court to instruct the jury on reducing plaintiff's future damages to present value and, because defendant failed to request such an instruction, no reversal is required.

5. Defendant's contentions that the jury verdict was excessive and that the trial court abused its discretion by denying defendant's motion for new trial or remittitur are without merit.

6. Reversed in part and remanded for new trial with regard to the issue of defendant's breach of duty. The trial court's judgment with regard to proximate causation and damages is affirmed.

Affirmed in part, reversed in part, and remanded.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment on the ground that there is no genuine issue as to any material fact tests whether there is factual support for a claim and is to be tested by the pleadings, affidavits, depositions, admissions and other documentary evidence available to the court and is properly granted only where it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — MATERIAL FACT — COURT RULES.

The material fact to which reference is made in the court rule which allows the grant of summary judgment in cases where there is no genuine issue as to any material fact is the ultimate fact issue upon which a jury's verdict must be based; the difference between an evidentiary fact and a material fact, or ultimate fact, is the difference between the raw data admissible in evidence and the inferences or conclusions of fact essential to the claim or defense which properly may be drawn or reached by a jury from such data (GCR 1963, 117.2[3]).

3. NEGLIGENCE — RES IPSA LOQUITUR.

Michigan has not formally adopted the doctrine of *res ipsa loquitur;* however, the underlying concepts of the doctrine, which are circumstantial evidence and negligence concepts, have been applied by Michigan courts.

4. NELGIGENCE — RES IPSA LOQUITUR.

Four conditions must exist to allow application of the doctrine of *res ipsa loquitur:* (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant, (3) the event must not have been due to any voluntary action or contribution by plaintiff, and (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

5. NEGLIGENCE — RES IPSA LOQUITUR — INFERENCE OF NEGLIGENCE.

The question of whether the inference of negligence raised by the application of the doctrine of *res ipsa loquitur* is avoided or explained away by the defendant requires a weighing of the proofs and must be left for the trier of fact.

6. EVIDENCE — MORTALITY TABLES.

Mortality tables are admissible in an action for a death to establish a previously healthy decedent's expectancy of life; however, where the decedent was in ill health prior to his death, estimates of his life span based upon mortality tables may properly be excluded from evidence.

7. DAMAGES — FUTURE LOSSES — PRESENT VALUE.

An award of damages for future losses must be reduced to present value.

8. DAMAGES — FUTURE DAMAGES — JURY INSTRUCTIONS — APPEAL.

A trial court is under an obligation to instruct the jury that an award for future damages is to be reduced to present value even in the absence of a request for such an instruction; however, where the defendant fails to request such an instruction and the trial court does not give one, the Court of Appeals will not reverse a damage award absent manifest injustice.

9. DAMAGES — PAIN AND SUFFERING — VERDICT — CLEARLY EXCESSIVE VERDICTS.

The amount of damages allowed for pain and suffering rests in the sound judgment of the trier of the facts and a trial court cannot substitute its judgment on that question unless a verdict

has been secured by improper methods, prejudice or sympathy or is so clearly excessive as to shock the judicial conscience.

*Rifkin, Kingsley & Rhodes, P.C.,* for plaintiff.

*Buchanan, Ogne & Jinks, P.C.,* for defendant.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

N. J. KAUFMAN, P.J. This is an appeal from a wrongful death action resulting in a jury verdict for the plaintiff, Jo Anne Neal, for $250,000. The decedent, Leamon Neal, was 13-1/2 months old at the time of his death on March 7, 1976. He was mentally retarded and was a patient at defendant, Friendship Manor Nursing Home. It was undisputed at trial that on January 10, 1976, Leamon was burned by the placing of a hot water bottle on his bare abdomen by an agent of the defendant. Leamon died on March 7, 1976, from respiratory arrest and pulmonary congestion. At trial there was conflicting evidence whether the previous burn had precipitated Leamon's death.

Prior to trial, plaintiff moved for summary judgment under GCR 1963, 117.2(3) on the issue of defendant's negligence. Plaintiff contended that there was no genuine issue of material fact as to the contention that one of defendant's nurses placed the hot water bottle on the decedent. Plaintiff theorized that negligence was clear inasmuch as the hot water bottle caused second-degree burns on the child's abdomen. The trial court granted plaintiff's motion at a hearing on January 12, 1979, but preserved for trial the issues of proximate causation and damages.

On appeal, defendant challenges the granting of

* Circuit judge, sitting on the Court of Appeals by assignment.

summary judgment, contending that the trial court made findings of fact in lieu of determining whether an issue of material fact existed. The standard to be utilized in ruling on a motion for summary judgment under GCR 1963, 117.2(3) was reiterated in *Partrich v Muscat,* 84 Mich App 724, 730-731; 270 NW2d 506 (1978):

"When passing upon a motion under this subrule, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence then available to it. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). Before the judgment may properly be granted the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Rizzo v Kretschmer, supra.* The motion has the limited function of determining whether material issues of fact exist. The trial court must carefully avoid making findings of fact under the guise of determining that no issues of material fact exist." (Footnote omitted.)

Pertinent to this case is the *Partrich* Court's elaboration of the concept of "an issue of material fact":

" 'The material fact to which reference is made in the rule is the ultimate fact issue upon which a jury's verdict must be based. For example, in a contract case the material fact, or ultimate fact, as distinguished from the evidentiary fact, is the meeting of the minds, rather than merely that the parties conferred; the payment and receipt of consideration, not just that money passed hands; the breach of a material condition, rather than just that defendant delivered ·the goods on a day after the date promised. For further example, in a negligence case the material fact, or ultimate fact, as distinguished from the evidentiary fact, is that plaintiff was within a zone of foreseeable danger, rather than merely that plaintiff was walking along the road on which defendant's car was traveling; that defendant's negligence, if found, was the proximate cause of the collision, not just that there was an impact

between plaintiff and defendant's car; that plaintiff was contributorily negligent, rather than just that he was walking on the paved portion of the highway. In short, *the difference between the evidentiary fact and material fact, or ultimate fact, is the difference between the raw data admissible in evidence and the inferences or conclusions of fact essential to the claim or defense which properly may be drawn or reached by a jury from such data.' Simerka v Pridemore,* 380 Mich 250, 275; 156 NW2d 509 (1968) (opinion of SOURIS, J.)" 84 Mich App 724, 730-731, fn 3. (Emphasis added.)

In the instant case, the trial court granted plaintiff's motion on a *res ipsa loquitur* type of theory, stating:

"We have circumstantial evidence *which makes necessary* an inference that a failure to use ordinary care occurred here. I'm going to grant the motion for partial summary judgment as to the question of negligence only, leaving for trial the issue of proximate causation and the issue of damages." (Emphasis added.)

Although Michigan has not formally adopted the doctrine of *res ipsa loquitur,* the underlying concepts of the doctrine, which are circumstantial evidence and negligence concepts, have been applied here. *Wilson v Stilwill,* 411 Mich 587, 607, fn 5; 309 NW2d 898 (1981), *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117; 139 NW2d 722 (1966). Four conditions must exist to allow application of the doctrine:

"1. The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.

"2. The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.

"3. The event must not have been due to any voluntary action or contribution on the part of the plaintiff.

"4. Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff." *Gadde v Michigan Consolidated Gas Co, supra,* 124.

When the doctrine of *res ipsa loquitur* is applied, while it raises an inference of negligence, a defendant may "attempt to explain away or avoid, if he can," that inference. The question of whether the inference of nelgigence is avoided requires a weighing of the proofs and must be left for the trier of fact. *Moncrief v Detroit,* 398 Mich 181, 192-193; 247 NW2d 783 (1976), *Mitcham v Detroit,* 355 Mich 182, 192; 94 NW2d 388 (1959).

It is apparent here that the four conditions for application of the *res ipsa loquitur* doctrine were met and that an inference of negligence could therefore be drawn. However, the trial court's conclusion that such an inference was *necessary* resulted in error. In essence, the trial court failed to distinguish between evidentiary facts and the inferences or conclusions to be drawn from those facts. *Partrich v Muscat, supra.* By making the inference of defendant's negligence a conclusive one, the trial court usurped the fact-finding role of the jury ultimately impaneled. Consequently, we must reverse and remand for a new trial with regard to the issue of defendant's breach of duty. Because we find defendant's remaining appellate claims to be without merit, we affirm the trial court's judgment with regard to proximate causation and damages.

Defendant argues that the manner in which the grant of summary judgment was phrased deprived the nursing home of a fair trial on the remaining issues of proximate causation and damages. Defendant points out that the hearing judge granted the summary judgment on the issue of liability, which,

he contends, subsumed the question of proximate cause. We disagree. Although the hearing and trial judges misused the term "liability", their failure to speak with complete precision worked no prejudice to defendant. The order of summary judgment, the opening statements of both counsel at trial and the trial court's preliminary jury instructions all expressly stated that the issue of proximate causation remained to be determined. Moreover, the court gave a complete instruction on proximate causation without objection from either of the parties. Defendant's contention that the issue was removed from the jury's consideration is simply without merit.

Defendant also claims that reversible error occurred because the jury instructions on damages informed the jury of plaintiff's life expectancy as taken from mortality tables. The information was related as being pertinent to plaintiff's loss of society and companionship of her son. Defendant claims that the jury should not have been permitted to consider plaintiff's life expectancy since it was unlikely that the decedent would have outlived plaintiff even absent the burn.

Defendant's claim would have merit if it was undisputed that the decedent had a lower life expectancy than plaintiff. See 1 SJI 2d 53.02, pp 8-53—8-54. However, the trial testimony left that issue open; defendant's own staff physician conceded that severely disabled children such as the decedent could survive into adulthood with proper medical care. It is possible that the decedent might have outlived plaintiff. Still, because the decedent was in ill health, mortality figures on his life expectancy were properly excluded. *Norris v Detroit United Railway,* 193 Mich 578, 583; 160 NW 574 (1916). The jury was told to determine dece-

dent's life expectancy from the evidence. The jury was informed, in any event, that in evaluating plaintiff's life expectancy they were to take into consideration the number of years the decedent was likely to live. Thus, no error took place. Plaintiff's life expectancy was relevant to the jurors' decision since it was possible that the decedent might have otherwise survived her. The jury was cautioned to temper the mortality information with decedent's life expectancy as derived from the trial evidence.

Defendant next argues that the trial court committed reversible error by failing to instruct the jury on reducing plaintiff's future damages to present value. In Michigan, damages for future losses must be reduced to present value. *Currie v Fiting,* 375 Mich 440, 454; 134 NW2d 611 (1965). However, where a defendant fails to request such an instruction, as defendant failed at trial, this Court will not reverse absent a manifest injustice. *Harper v National Shoes, Inc,* 98 Mich App 353, 357; 296 NW2d 1 (1979). After reviewing the circumstances of the instant case, we conclude that no manifest injustice has taken place.[1]

We also find defendant's final claims, that the jury verdict was excessive and that the trial court abused its discretion by denying defendant's motion for new trial or remittitur, to be without merit. Unless a verdict is secured by improper methods, prejudice or sympathy, the award of damages for pain and suffering rests in the sound judgment of the trier of fact. *Bennett v Hill,* 342 Mich 754, 763-764; 71 NW2d 220 (1955). In the

[1] Our decision is not influenced by plaintiff's contention, *not of record,* that the omission of the instruction was a direct tradeoff for omission of an instruction on the computation of interest. Our review is limited by what appears in the trial court record. *Dora v Lesinski,* 351 Mich 579; 88 NW2d 592 (1958).

alternative, a verdict may be reversed if it is so excessive as to "shock the judicial conscience". *Belin v Jax Kar Wash No 5, Inc,* 95 Mich App 415, 423-424; 291 NW2d 61 (1980).

Here, there is no indication that the verdict was secured by any improper method, or by prejudice or sympathy. Moreover, we cannot say that the damages assessed, $150,000 for the decedent's pain and suffering and $100,000 for plaintiff's loss of society and companionship, shock the judicial conscience. In doing so we give some deference to the trial court, which was best able to observe the jury and, with them, was best able to measure plaintiff's actual loss and the amount that could most reasonably compensate her. *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981).

Reversed in part and remanded for new trial with regard to the issue of defendant's breach of duty. The judgment is otherwise affirmed with respect to the issues of proximate causation and damages.