INCARNATI v SAVAGE

Docket No. 54995. Submitted June 2, 1982, at Detroit.—Decided December 8, 1982. Leave to appeal applied for.

Phillip Incarnati brought in Wayne Circuit Court an action against Michael W. Savage for damages resulting from injuries caused by defendant's automobile's striking plaintiff's motorcycle. During trial, after both parties had rested, plaintiff moved to amend an error contained in a deposition transcript which had been read to the jury. Theodore R. Bohn, J., granted the motion to correct the transcript. The jury returned a verdict in favor of plaintiff. Defendant appeals. Plaintiff cross-appeals.
*Held:*

1. By court rule, any error in a deposition transcript will be deemed waived if not corrected within a reasonable time after it is discovered or should have been discovered. Since this error should have been discovered well before trial, the failure to correct the error prior to trial resulted in waiver of that error. It, therefore, was error mandating reversal to permit the correction of the transcript during trial.

2. The failure of the trial court to instruct the jury, *sua sponte,* as to reduction of future damages to present worth did not constitute error mandating reversal, since manifest injustice has not been shown.

3. The trial court properly instructed the jury on the statutory presumption of a defendant's negligence resulting from a rear end collision since reasonable persons, on the basis of the evidence presented, could differ on whether a rear end collision had occurred.

4. Once an injured person establishes that he has suffered serious impairment of bodily function so as to be entitled to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 23 Am Jur 2d, Depositions and Discovery §§ 87, 88.
[2] 5 Am Jur 2d, Appeal and Error § 797.
[3] 22 Am Jur 2d, Damages §§ 108, 349.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 992, 1121.
[5] 7 Am Jur 2d, Automobile Insurance § 349.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR2d 229.

proceed with a tort claim rather than having to rely solely on automobile no-fault insurance benefits, that person may recover all his noneconomic losses whether or not those noneconomic losses occurred after the serious impairment of bodily function had ceased.

Reversed and remanded.

1. DISCOVERY — DEPOSITIONS — ERRORS IN TRANSCRIPTS — COURT RULES.

A mistake in a deposition transcript is deemed waived, pursuant to the court rules, unless it is corrected within a reasonable time after the error is discovered or should have been discovered; an error in a 24-page deposition transcript taken two years prior to trial should with reasonable diligence be discovered prior to trial (GCR 1963, 308.4).

2. DISCOVERY — DEPOSITIONS — ERRORS IN TRANSCRIPTS — TRIAL — COURT RULES.

It is error mandating reversal to permit the correction during trial of an error in a deposition transcript which should have been discovered prior to trial where the allowing of the correction was prejudicial to the opposing party (GCR 1963, 308.4).

3. DAMAGES — FUTURE DAMAGES — JURY INSTRUCTIONS — APPEAL.

A trial court is under an obligation to instruct the jury that an award for future damages is to be reduced to present value even in the absence of a request for such an instruction; however, where the defendant fails to request such an instruction and the trial court does not give one, the Court of Appeals will not reverse a damage award absent manifest injustice.

4. AUTOMOBILES — NEGLIGENCE — JURY INSTRUCTIONS — PRESUMPTIONS — EVIDENCE.

A jury instruction relative to the statutory rear end collision presumption of a defendant's negligence is proper where, on the evidence presented, reasonable persons could differ on whether a rear end collision had occurred (SJI2d 12:01).

5. AUTOMOBILES — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTIONS — TORT LIABILITY — DAMAGES.

An injured person, once such person has met the serious impairment of body function requirement so as to be entitled pursuant to the automobile no-fault insurance act to recover in a tort action damages for noneconomic loss, is entitled to recover all such damages for noneconomic losses including those incurred in the period after his serious impairment of body function has ceased (MCL 500.3135[1]; MSA 24.13135[1]).

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jack E. Vander Mule*), for plaintiff.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *David J. Lanctot*) and *Gromek, Bendure & Thomas* (by *James G. Gross* and *John Lydick*), of counsel, for defendant.

Before: BRONSON, P.J., and R. M. MAHER and M. WARSHAWSKY,* JJ.

PER CURIAM. Defendant appeals and plaintiff cross-appeals from a jury verdict in Wayne County Circuit Court which awarded damages to plaintiff for personal injuries suffered in a car-motorcycle accident.

Between midnight and 12:30 a.m. on June 8, 1974, plaintiff and a friend rode motorcycles on a two-lane road. As plaintiff reached a crest in the road, he noticed his friend was no longer by his side. As he proceeded down the other side of the slight hill, plaintiff heard a shout causing him to look over his should behind him. At that point, plaintiff testified, he saw a car, driven by the defendant, coming down the incline towards him. The two vehicles collided. Plaintiff testified that he believed the car struck the rear of his motorcycle. Defendant testified that his car struck the front of plaintiff's motorcycle because it faced him broadside, straddling the road's center as if to make a U-turn. Attempting to avoid the accident, defendant testified, he swerved his car into the left lane.

Plaintiff suffered a fractured right arm. A rod was surgically placed in plaintiff's forearm and a cast put over the arm by Dr. James Ryan, an orthopedic specialist. The cast was removed in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

September or October of 1974. The rod was removed sometime between November, 1974, and January, 1975, the record being unclear. After the rod was removed and up to the time of trial, plaintiff complained of stiffness in his arm in damp, cold weather.

At trial, after the parties had rested and prior to closing arguments, the trial judge granted plaintiff's request to change a word in Dr. Ryan's deposition transcript, which had already been read to the jury. Defendant contends this was reversible error.

On the first day of trial, the following from Dr. Ryan's deposition was read to the jury:

"*Q*. If he [plaintiff] were to indicate, Doctor, that his arm still becomes stiff and swells if any unusual activity is required, would that be *inconsistent* with your experience and understanding of the medical situation?

"*A*. I would think so at this date." (Emphasis added.)

The actual *question put to* the doctor was whether *the symptoms were* consistent. Through a stenographic error, the word "inconsistent" was inserted into Dr. Ryan's deposition transcript.

On the second day of trial, plaintiff's counsel apparently alluded to the transcript error when he told the court:

"*[Plaintiff's attorney]:* There is only one other matter I believe there is a mistake in a transcript. I think it can be remedied by Wednesday. I don't want to point out yet what it is, but I am having the court reporter check it. And with the court's permission, if there is— certainly I ought to be able to make that correction I believe at any stage prior to closing argument. I will have that by Wednesday. I am just having the court reporter check the shorthand notes. And I will bring it to the court's attention prior to Wednesday.

"*[Defense attorney]:* I am not even entitled to know what he is talking about until Wednesday?"

The trial court allowed the correction on the third day of trial after the parties had rested. The jury was informed that the correct word was "consistent". The trial judge read again to the jury the erroneous transcription and then the corrected version.

GCR 1963, 308.4 reads:

"As to Completion and Return of Deposition. Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed or otherwise dealt with by the person before whom taken under Rules 306 or 307 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained."

Under the court rule, the transcript mistake should have been deemed waived. Its last minute correction was reversible error requiring a new trial. Under GCR 1963, 308.4, errors in deposition transcripts are waived if not corrected within a reasonable time after the error was discovered or should have been discovered. Here, the error should have been discovered sooner. Plaintiff took the deposition nearly two years prior to trial. The transcript was 24 pages long. A party exercising due diligence would have discovered the error between the time of transcription and the time it was read at trial. The treating physician's deposition testimony in a personal injury lawsuit is important. GCR 1963, 308.4 does not contemplate only an express waiver, as plaintiff seems to believe.

Moreover, correction of the transcript after the parties had rested was prejudicial to the defendant. In his opening statement, defense counsel relied on the very part of Dr. Ryan's transcript which was later changed. Defense counsel informed the jury that plaintiff's claims of swelling were considered inconsistent by Dr. Ryan with the type of injuries sustained in the motorcycle accident. The defense sought to show that plaintiff's injuries were not serious and that defendant was not responsible for injuries to plaintiff which occurred after plaintiff fell while on a fishing trip. Then plaintiff's counsel referred to the corrected part of the transcript in his closing and rebuttal arguments, reciting as damages plaintiff's residual problems with his elbow having stiffness. Thus, the late correction of the transcript destroyed the defense strategy. It also impaired defendant's credibility with the jury. See *Seaton v State Farm Life Ins Co,* 75 Mich App 252; 254 NW2d 858 (1977); GCR 1963, 308.5.

Because we reverse and remand for a new trial, we address defendant's other contentions and plaintiff's cross-appeal. The trial judge did not reversibly err in failing to instruct the jury, *sua sponte,* to reduce future damages to their present worth under SJI 34:03, see now SJI2d 53:03, absent manifest injustice. *Neal v Friendship Manor Nursing Home,* 113 Mich App 759; 318 NW2d 594 (1982), *Harper v National Shoes, Inc,* 98 Mich App 353; 296 NW2d 1 (1979). See *Grewe v Mount Clemens General Hospital,* 404 Mich 240; 273 NW2d 429 (1978). We do not consider plaintiff's argument that it is a common trade-off in Wayne County Circuit Court for one party not to request present worth instructions if the other does not request an instruction on prejudgment interest, *Neal, supra,* p 767, fn 1, since no agreement ap-

pears of record, *Dora v Lesinski,* 351 Mich 579; 88 NW2d 592 (1958). Parties should place such agreements on the record.

We find the evidence adduced at trial sufficient to warrant the instruction to the jury, SJI2d 12:01, that, if it found a rear end collision had occurred, under the statute, MCL 257.402(a); MSA 9.2102, it could presume defendant was negligent. Reasonable persons could differ on whether a rear end collision had occurred. *Jaworski v Great Scott Supermarkets, Inc,* 403 Mich 689, 698; 272 NW2d 518 (1978). Defendant testified that plaintiff's motorcycle faced him broadside and that his car struck the front end of the motorcycle. Plaintiff testified he believed the rear end of his motorcycle was struck.

Finally, we accept plaintiff's contention on cross-appeal that the trial judge erred in instructing the jury that plaintiff was entitled to recover noneconomic damages only for the period during which he suffered a serious impairment of body function, under MCL 500.3135(1); MSA 24.13135. The trial judge followed *Rusinek v Schultz, Snyder & Steele Lumber Co,* 98 Mich App 380; 296 NW2d 262 (1980), *rev'd on other grounds* 411 Mich 502; 309 NW2d 163 (1981), *reh den* 412 Mich 1101 (1981), the only case available on the controlling law. However, we believe that *Rusinek* was incorrectly decided.

MCL 500.3135(1); MSA 24.13135(1) provides:

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

Thus, according to the plain and unambiguous

terms of the statute, a tortfeasor is liable for noneconomic loss where the injured person has sustained, *inter alia,* serious impairment of body function. Once this threshold has been crossed by a particular plaintiff, the defendant remains liable for all noneconomic loss suffered by the plaintiff. Nothing in the language of the statute supports the result reached by the *Rusinek* panel; indeed, the Court was forced to rely upon vague policy considerations instead of focusing on the words chosen by the Legislature.

Statutes in derogation of the common law must be strictly construed, see *Rusinek, supra,* 411 Mich 508; and it is clear beyond peradventure that a statute that abolishes liability for noneconomic loss is contrary to the common law. The *Rusinek* panel's construction of the statute is inconsistent with this cardinal principle and does violence to the Legislature's intent in enacting this provision. Permitting severely injured persons to recover all of the noneconomic damages they have sustained "does not create a new case nor does it contribute significantly to the problems the act was intended to alleviate". 411 Mich 508.

Accordingly, on remand, the trial court should instruct the jury that plaintiff is entitled to recover noneconomic damages for the period beyond which he suffered a serious impairment of body function.

Reversed and remanded.