Rebecca PRITCHARD, And her
husband, Douglas Pritchard,
Plaintiffs-appellants,

v.

NORTHWEST AIRLINES, INC.,
Defendant–Appellee.

No. 03–1927.

United States Court of Appeals,
Sixth Circuit.

Sept. 15, 2004.

Before BATCHELDER and GIBBONS, Circuit Judges; and STAFFORD, District Judge.*

GIBBONS, Circuit Judge.

Plaintiffs-appellants Rebecca and Douglas Pritchard appeal the district court's grant of summary judgment to defendant-appellee Northwest Airlines, Inc. On October 26, 2001, the Pritchards filed an action against Northwest in the Circuit Court of Wayne County, Michigan alleging state law causes of action of premises liability, negligence, and loss of consortium. The Pritchards claimed that Northwest had negligently allowed snow to collect on the jetway leading to its airplane, causing Rebecca Pritchard to fall and sustain various injuries, which were exacerbated by her foot's becoming stuck in a gap between the jetway and the airplane. Northwest removed the case to the district court based on diversity of citizenship on December 4, 2001. The district court granted summary judgment to Northwest, from which the Pritchards timely appealed. For the following reasons, we affirm the judgment of the district court.

### I.

On the night of December 31, 1998, Rebecca Pritchard traveled from her home in Michigan to Kansas City to meet her husband, who was traveling on business. On the first leg of her trip, she flew from Lansing Airport to Detroit Metropolitan Airport to catch her connecting flight to Kansas City. Pritchard waited through a four hour layover before her connecting flight, then experienced further delays due to a snowstorm in the Detroit area. While waiting, Pritchard drank a glass of wine in the airport lounge and went outside frequently to smoke.

At the time Pritchard attempted to board her flight to Kansas City, she was wearing a winter coat and casual dress shoes with a heel less than one inch high. Also, she was carrying a purse over her shoulder.

In order to board the plane, Pritchard had to walk down a jetway for a short distance, then turn sharply to the left. The jetway had handrails, which she used.

---

* The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

She stated that there were no passengers walking down the jetway in front of her and that she did not see a flight attendant near the doorway to the airplane. She did not initially observe anything wrong with the jetway, but slipped as she neared the doorway of the plane. She stated, "I was walking toward the plane on the ramp and just walking and slipped, then I went down on all fours." During the fall, Pritchard injured her right foot, which because of the slip became trapped in a gap between the plane and the jetway, and bruised her knee.

In her deposition, Pritchard said that she did not see anything on the floor of the jetway prior to her fall, but did see water on the floor after the fall. In an affidavit subsequent to her deposition, she stated that the water she saw on the jetway floor "was composed of a clear, slushy, icy mixture." Fellow passenger Brian DeArment stated that snow from outside had blown into the jetway. In addition, Northwest's incident report acknowledges that the jetway "had snow on it from blowing." Pritchard estimates that the gap was four inches wide, while emergency personnel estimate that it was closer to two or three inches. Northwest's training manual calls for a one inch gap.

Despite her injury, Pritchard continued on her trip. Emergency medical services personnel wrapped her foot, and the airline gave her some ice, a pillow, and a seat in first class. Her knee has healed, but she continues to experience pain in her foot.

## II.

We review a district court's order granting summary judgment *de novo*. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir.2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.

The Pritchards' premises liability and negligence claims are based on Northwest's purported negligence in failing to protect Rebecca Pritchard from the danger posed by snow inside the jetway and by the gap between the jetway and the airplane. Possessors of land have a duty " 'to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land' that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 537 N.W.2d 185, 186 (1995). Both Pritchard and Northwest agree that Pritchard, as a passenger, was a business invitee of Northwest.

The district court determined that Pritchard had presented no evidence that Northwest caused the conditions or had notice of them. Further, it determined that Northwest owed no duty to safeguard Pritchard from the gap because the danger posed by it was open and obvious.

On appeal, the Pritchards argue that the district court erred in determining that the danger posed by the gap was open and obvious. We note, however, that the harm

to the plaintiff caused by the gap was entirely derivative of the harm caused by the slippery floor. Pritchard's foot became stuck in the gap as a result of her slipping. Therefore, we believe that the more pertinent question is not whether the gap was open and obvious, but whether there is evidence on which to find Northwest responsible for the slippery condition of the floor.

The Pritchards argue that the district court erred in finding that Northwest was not responsible for the slippery floor. Under Michigan law, Northwest is liable for plaintiffs' injuries only if the condition of [the property] was caused by defendant's active negligence or the condition had existed a sufficient length of time that [Northwest] should have had knowledge of it." *Derbabian v. Meriner's Pointe Assocs. Ltd. P'ship,* 249 Mich.App. 695, 644 N.W.2d 779, 784 (2002) (quotation omitted). In other words, a property owner is liable for an unsafe condition only if the owner or his agent caused the condition or knew or should have known of the condition.

> Specifically, Michigan courts require a plaintiff to show either that the defendant created the unsafe condition, or that the unsafe condition was known to defendant, or that the unsafe condition was of such a character or had existed for a sufficient length of time such that defendant should have known of the condition.

*Gjelaj v. Wal–Mart Stores, Inc.,* 27 F.Supp.2d 1011, 1013 (E.D.Mich.1998).

■ The Pritchards have failed to present evidence sufficient to permit an inference that Northwest's negligence caused the slippery condition. They argue that the snow blew into the jetway because the jetway was docked too far away from the plane to provide proper protection. However, unrebutted testimony from Cathy Weiss, a Northwest customer service agent, established that snow could enter the jetway even when the jetway was properly docked and the canopy properly lowered because, per Northwest regulations, a gap always remained between the jetway and the airplane. Thus, given the snowy weather conditions, it is likely that snow would have entered the jetway even in absence of the alleged negligence.

■ The Pritchards also attempt to employ the doctrine of *res ipsa loquitur* to establish Northwest's negligence. Although Michigan has not formally adopted the doctrine, it does allow a similar means of proving negligence by circumstantial evidence if four conditions are met:

1. The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.

2. The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.

3. The event must not have been due to any voluntary action or contribution on the part of the plaintiff.

4. Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Estate of Neal v. Friendship Manor Nursing Home,* 113 Mich.App. 759, 318 N.W.2d 594, 596 (1982). Weiss's testimony establishes that the event is not "of a kind which ordinarily does not occur in the absence of someone's negligence" because snow could blow into the jetway even if expertly docked because the canopy and ramp did not form a tight seal against the weather.

■ Further, the Pritchards have failed to submit evidence sufficient for us to conclude that Northwest had notice of the slippery condition. Specifically, they have

not shown "that the unsafe condition was known to defendant, or that the unsafe condition was of such a character or had existed for a sufficient length of time such that defendant should have known of the condition." The Pritchards do not contend that Northwest actually knew of the condition. Rather, they argue that the snow was on the jetway floor for a length of time such that Northwest should have discovered it. However, from the scant evidence before us, we could hardly hazard a guess as to how long the snow had been in the jetway. Based on Rebecca Pritchard's observation of slush after the fall, the Pritchards argue that the snow had largely melted by the time Rebecca Pritchard slipped on it. Thus, they say, it must have been in the jetway for a considerable length of time. This proof amounts to no more than speculation about the condition of the snow before the fall and the length of time it had been on the jetway floor. In the absence of any evidence tending to show how long the condition had existed, a jury could not conclude that Northwest should have known of it.

### IV.

For these reasons, we affirm the district court's decision granting summary judgment to Northwest.

STAFFORD, District Judge, dissenting.

Because I think the issue of constructive notice should have been decided by a jury. I must respectfully dissent. There is evidence in the record demonstrating that (1) snowy and windy conditions existed the day Rebecca Pritchard fell, necessitating the delay of her flight from Detroit to Kansas City by several hours; (2) Northwest was well aware "that snow could enter the jetway even when the jetway was properly docked and the canopy properly lowered because, per Northwest regula-

tions, a gap always remained between the jetway and the airplane," *supra* at 409; (3) Northwest had put blankets down on other occasions when the weather had created wet, snowy, and/or icy conditions on the jetway; (4) snow, slush, or water had, in fact, blown onto the jetway at or near the time Pritchard fell; (5) Pritchard was the first passenger permitted to board the aircraft after a lengthy delay on the tarmac; and (6) Pritchard did not see the wet, slushy conditions on the jetway before she fell. *See Andrews v. K Mart Corp.,* 181 Mich.App. 666, 450 N.W.2d 27 (1989) (reversing the district court's entry of summary judgment in favor of the defendant in a slip and fall case where the deposition testimony demonstrated that (1) the plaintiff slipped on a curled-up rug that she failed to notice; (2) while the defendant had no actual notice of the curled-up condition of the rug, the defendant knew that rugs used in its store had a tendency to curl up in the wintertime; and (3) the defendant's employees made regular inspections and routinely replaced defective rugs).

Clearly, Northwest was in a better position to anticipate the conditions that could and—as the airline knew from experience—often did create a hazard for passengers boarding the aircraft during a severe winter snowstorm. Here, the boarding process was delayed several hours because of the weather, and, during that time, Northwest had sole control over the aircraft and the jetway leading into it. Given the evidence, a jury might conclude that (1) when Northwest opened the jetway for boarding, the jetway should have been safe; (2) when allowed to board, the passengers—especially the first passenger—had good reason to assume that the jetway was safe; and (3) given the weather that day, Northwest should have known about, and taken

steps to prevent, the hazardous conditions that caused Pritchard to fall. Under these circumstances, I would reverse the district court's entry of summary judgment in Northwest's favor and would remand the case for trial.