456 S.E.2d 550

G. Frank KEEN, Charles Willett, Robert Marshall, Richard Krogh, William Marshall and Mountaineer Chapter of Trout Unlimited, Plaintiffs below, Appellants,

v.

William MAXEY, in His Official Capacity as Director, West Virginia Division of Forestry, Defendant below, Appellee,

and

Coastal Lumber, Inc., Intervenor Below.

No. 22591.

Supreme Court of Appeals of West Virginia.

Submitted March 7, 1995.

Decided March 24, 1995.

John T. McFerrin, Beckley, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., George P. Surmatis, Asst. Atty. Gen., Charleston, for appellee.

Robert G. McLusky, M. Shane Harvey, Jackson & Kelly, Charleston, for intervenor.

NEELY, Chief Justice:

This is an appeal from a final order of the Kanawha County Circuit Court, dismissing a Petition for Injunctive and Declaratory Relief and dissolving a temporary injunction halting a timber sale between the West Virginia Division of Forestry and Coastal Lumber, Inc. The appellants are recreational users of Kumbrabrow State Forest ("Forest") in Randolph County. Appellee is the Director of the Division of Forestry ("Division") and Coastal Lumber, Inc. is an Intervenor.

The appellants assert that the Division must obtain the approval of the Public Lands Corporation, pursuant to *W.Va. Code*, 20–1A–3(4) [1989], before contracting for the sale of timber from state forests. The appellants also claim that by managing the forest to promote timber production, the Division violated its statutory mandate. The circuit court ruled that *W.Va.Code*, 20–1–7(13) [1986] and 19–1A–1, *et seq.* [1985] specifically authorize the Division of Forestry to contract for the sale of timber, with the written approval of the Governor. Furthermore, the appellants maintain that the proposed timber sale is consistent with the statutory guidelines governing the Division of Forestry. For the reasons stated below, the judgment of the circuit court is affirmed.

## I.

For the past 17 years, there have been 33 sales of timber without the approval of the Public Lands Commission. In 1992 the Division proposed the sale of timber from within 162 acres of trees in the state forest known as the "Clay Run tract". The targeted acreage amounts to 1.6% of the total 9000 acres. Only certain marked trees within the 162 acres will be cut, thus 95% of the trees will be left intact after the sale. In addition, 80% of the trees marked for sale are diseased or dying.

The Division proposed the timber sale to selectively remove damaged and diseased trees, diversify the forest, and construct a service road through the forest, creating access for fire fighters and people who want to hunt, fish, hike or indulge in other recreational activities. Prior to accepting bids for the sale, David Lilly, the Division's District Forester with over 25 years of forestry experience, developed a plan to cut the timber. Mr. Lilly designed a "prescription", which is a selective cut where specific trees are identified and marked for sale taking into account the impact on wildlife, water, and recreational uses of the forest.

To develop the prescription, Mr. Lilly also obtained comments from the West Virginia Division of Parks and Recreation, and the Wildlife and Fisheries sections of the Department of Natural Resources. Then, professional foresters marked trees to be cut, targeting diseased and damaged trees, and considering diversity and spacing issues. No cutting is permitted within 2000 feet of any stream or tributary, and 40% of trees 20 inches in diameter or larger are to be left standing. Healthy trees within fifty feet on either side of the walking trail were not marked to be cut. However, the appellants claim that ⅓ of the hiking trails will be destroyed, and that the selected trees are of unique and rare value.

The prescription plan was approved by the Division's Director. The Division also obtained the written approval of the Governor, pursuant to *W.Va.Code*, 20–1–7(13) [1986]. After the prescription was approved, bids were taken and Coastal Lumber, Inc. was the successful bidder. The contract specifies that only selected trees could be removed, and provides for treble damages for violating the prescription.

## II.

■ *West Virginia Code*, 20–1–7(13) [1986] and 19–1A–1, *et seq.* [1985] clearly and unambiguously grant authority to the Division of Forestry to contract for the sale of timber, with the written approval of the Governor so long as such sale comports with the overall

sound management of the forest. *West Virginia Code*, 20–1–7(13) provides, in pertinent part, that the Director of the Division of Natural Resources [1] is authorized and empowered to:

> Sell, *with the approval in writing of the governor*, timber for not less than the value thereof, as appraised by a qualified appraiser, from all lands under the jurisdiction and control of the director, except those lands that are designated as state parks and those in the Kanawha state forest.

There is no language that imposes a duty upon the Division to obtain the approval of the Public Lands Corporation before contracting for the sale of timber from a state forest.

The appellants argue that we must look to common law to determine whether the sale of timber is the sale of an interest in land subject to the approval of the PLC. The Public Land Corporation conducts the sale, transfer, or exchanges of public *land*, pursuant to *W.Va.Code*, 20–1A–3 [1989].[2] *West Virginia Code*, 20–1A–3(4) [1989] states that the PLC is authorized and empowered to: "[s]ell, purchase, or exchange lands or stumpage *for the purpose of consolidating lands* under state or federal government administration subject to the disposal criteria specified in subdivision three of this section."

The appellants argue that this reference to "stumpage" can be construed to include timber. *See Burruss v. Hardesty*, 171 W.Va. 61, 297 S.E.2d 836 (1982); *Quigley Furniture Co. v. Rhea*, 114 Va. 271, 76 S.E. 330 (1912) (defining stumpage as standing timber). However, the Division of Forestry is not engaging in *land consolidation*; it is managing the forest by engaging in timber production. Accordingly, we see no need to look to common law when we have a statute that clearly authorizes the Division of Forestry to contract for the sale of timber.

■ Our traditional rule of statutory construction is found in Syllabus Point 1 of *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969):

> " 'When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute.' Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369 [135 S.E.2d 262 (1964) ]." Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969).

Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia*, 190 W.Va. 416, 438 S.E.2d 596 (1993).

## III.

■ The appellants also argue that the legislative mandate authorizing the Division to manage the state forests, explicitly set forth in *W.Va.Code*, 19–1A–2 [1985], does not include timber production. In essence, the appellants contend that the Division abused or exceeded its authority by engaging in timber production. We disagree. *West Virginia Code*, 19–1A–2 states:

> The purposes of this article are to provide for promoting West Virginia products; promoting new forest products industries; *developing existing forest product industries*; promoting coordination of all state forests resources; advising the governor and Legislature on all aspects of forestry, the management of state forests for con-

---

1. In 1985 this authority was transferred to the Division of Forestry, pursuant to *W.Va.Code*, 19–1A–3.

2. Appellant cites two cases in support of the argument that the sale of an interest in land, even if less than a fee, by a state agency requires the approval of the PLC: *Shobe v. Latimer*, 162 W.Va. 779, 253 S.E.2d 54 (1979), a water rights case; *Samsell v. State Line Development Corp.*, 154 W.Va. 48, 174 S.E.2d 318 (1970), a mineral rights case. However, both of these cases were decided prior to 1985 when the powers and duties of the director of natural resources, relating to forestry, were singled out transferred to the division of forestry within the department of agriculture. *W.Va.Code*, 20–1–7(13) authorizes the Division of Forestry to contract for the sale of timber from any state forest, except Kanawha state forest, with the governor's approval. Thus, *Shobe* and *Samsell* do not control.

servation and preservation of wildlife, fish, forest species, natural areas, aesthetic and scenic values and to provide developed and undeveloped outdoor recreational opportunities, and hunting and fishing for the citizens of this state and its visitors. [Emphasis added.]

Developing existing forest product industries would logically include timber production to the extent that the decision to sell also comports with the Division's overall statutory mission. The facts of this case show that the selective cut was carefully designed to accommodate the Division's mandate to manage the forest on a "multiple-use basis", pursuant to *W.Va.Code*, 19–1A–1 [1985]. *West Virginia Code*, 19–1A–1 [1985] states, in pertinent part:

The Legislature further finds that the state forests are an important resource for silvicultural and scientific research; developed and undeveloped outdoor recreation; propagation of forest trees, fish and wildlife; wildlife and fisheries management; aesthetic preservation; hunting and fishing; timber production; and demonstration of state-of-the-art forestry management and therefor should be managed on a multiple-use basis.

The Division of Forestry designed a plan for the proposed timber sale with input from the Division of Wildlife, the Division of Fisheries, and the Department of Parks and Recreation.[3] The resultant plan imposed strict guidelines for the construction of access roads and protection of streams. Experts testified that the proposed sale enhances multipurpose use of the forest by facilitating: regeneration of the Red Oak component; creation of trails for hikers, bikers, and hunters; fire roads; fire breaks; and economic benefit for West Virginia. Accordingly, we find that the Division did not abuse or exceed its authority by contracting for the sale of

timber in this case. The Division satisfied its statutory mandate by designing the sale to accommodate multiple use management of the state forest.

## IV.

The appellants finally contend that certain of the trial court's findings of fact are not supported by the evidence and that the judgment should also be reversed for this reason.[4] Our review of the record and the findings of fact clearly indicate that two (2) of the thirty-one (31) findings are without evidentiary support, or directly contrary to uncontradicted expert testimony. However, there are numerous findings of fact supported by the evidence.

It is true that findings of a trial court that are clearly wrong or against the preponderance of evidence may be grounds for reversal; however, this Court is required to view the entire record to determine if there are valid grounds to sustain the judgment. Although the trial court may have made findings that are unsupported by the evidence, "[t]he question always in the appellate court is, whether the judgment to be reviewed is correct." Syl. pt. 5, in part, *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730 (1964), *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (U.S.W.Va.1964) (No. 112). Our review of this record leads us to conclude that the trial court reached the correct result.

There was ample evidence to support the findings of fact that lead to the conclusion that the Division of Forestry was authorized to contract for the sale of timber from Kumbrabow State Forest, with the permission of the Governor; and that the sale was in conformance with the Division's mandate to manage the forest on a "multiple use basis."

---

3. The Deputy Director of the Division of Wildlife and the Administrator for the Division of Parks and Recreation testified that the proposed sale would not adversely impact the wildlife population, or recreational uses of the forest.

4. The appellants' other assignments of error include that the trial court erred by: (1) applying the incorrect legal standard in ruling on the appellants' request for injunctive relief; (2) ap-

proving a decision by the Division of Forestry to sell timber when that decision was based upon an application of the improper statutory standard to that decision; (3) implicitly determining that the appellee had satisfied his statutory mandate. Because we find that the Division was properly acting within its statutory mandate, we decline to address these assignments of error.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.