488 S.E.2d 389

**Robert S. McGRAW, Plaintiff Below, Appellant,**

v.

**ST. JOSEPH'S HOSPITAL, a Corporation, and Thomas J. Tarney, M.D., Defendants Below, Appellees.**

**No. 23540.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1997.

Decided Feb. 21, 1997.

Dissenting Opinion of Justice Maynard July 16, 1997.

**116**

William L. Jacobs, Parkersburg, for Appellant.

Jeffrey M. Wakefield, Don R. Sensabaugh, Flaherty, Sensabaugh & Bonasso, Charleston, for Appellees.

DAVIS, Justice:

This is an appeal by Robert S. McGraw, plaintiff below, from a summary judgment order of the Circuit Court of Wood County dismissing his complaint against the defendant below, St. Joseph's Hospital.[1] On appeal the plaintiff argues that the circuit court committed error in granting summary judgment on the grounds that medical expert testimony was required to show the defendant violated the standard of care in its treatment of him.

## I.

### FACTUAL BACKGROUND

The facts of this case are straightforward, though some critical points remain in dispute. On May 10, 1991 the plaintiff walked into the defendant's emergency room complaining of shortness of breath. After several hours of waiting to be seen by medical personnel, the plaintiff was admitted into the hospital. On the morning of May 11, four female hospital personnel attempted to assist the plaintiff back into bed.[2] The plaintiff testified during his deposition that he informed the four

---

1. There was a second defendant in the case, Dr. Thomas J. Tarnay. The record indicates that the plaintiff dismissed Dr. Tarnay from the case, prior to the summary judgment proceeding, pursuant to W.V.R.Civ.P., Rule 41(a)(1)(ii).

2. The record does not indicate whether the women were nurses or nurse's aides.

women that he did not believe they could put him in bed because he weighed too much.[3] The plaintiff's memory of what happened immediately after making that statement is minimal. He testified that all he could remember is that he "had a sensation of falling."[4] During the early morning hours of May 12 the plaintiff was discovered on the floor near his bed. The plaintiff indicated in his deposition that he fell out of bed.[5] The plaintiff further testified that on the afternoon of May 21, four female nurses and nurse's aides dropped him while attempting to place him in bed.[6] He stated that "they had to get men to put me—get me up and put me in bed after they had dropped me[.]" The plaintiff was eventually discharged from the hospital on June 28, 1991.

On May 6, 1993 the plaintiff filed the instant action against the defendant. The complaint charged the defendant with dropping or permitting him to fall on two occasions. It was also alleged that he sustained "a fractured neck and other injuries in, about and upon his arms, knees and other parts of his body" as a result of both incidents. After discovery in the case, the defendant moved for summary judgment "premised upon the failure of McGraw to produce expert testimony demonstrating that the hospital deviated from the standard of care and that any deviation caused injury or damage to McGraw."

By order entered June 16, 1995 the circuit court granted the defendant's motion for summary judgment on the grounds that "West Virginia law requires that a violation of the standard of care by a health care provider be proven by expert testimony," but that the plaintiff "is unable to produce expert

testimony as to any violation of the standard of care by the Hospital[.]" This appeal followed. We reverse.

## II.

### STANDARD OF REVIEW

■■■ We stated in syllabus point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) that "[a] circuit court's entry of summary judgment is reviewed de novo." *See also* Syl. pt. 1, *Jones v. Wesbanco Bank Parkersburg,* 194 W.Va. 381, 460 S.E.2d 627 (1995); Syl. pt. 1, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995). Syl. pt. 4, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). We, therefore, apply the same standard as a circuit court. *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 335 (1995). In syllabus point 2 of *Williams* the Court stated:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Further, in syllabus point 3 of *Williams* we held:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence

---

**3.** The record is not clear as to the exact weight of the plaintiff. It appears that he weighed somewhere between 280 to 306 pounds.

**4.** This incident was recorded in the nurse's progress notes by the defendant as follows: "4 ... lifted [patient] to feet [with] much difficulty—[patient] is weak, shaky [and] unsteady when up—knees buckled—[patient] placed into [bed]." The defendant's position on this incident is that its personnel did not drop the plaintiff, its "personnel had some difficulty in keeping McGraw on his feet[.]"

**5.** The defendant's nurse's progress notes report finding the plaintiff on the floor near his bed.

**6.** This incident was recorded in the nurse's progress notes by the defendant as follows: "Attempted to put [patient] back in bed. With help of four staff personnel [patient] stood up and pivoted. When ready to sit in bed [patient] gave out in legs and was helped to floor by staff. Several attempts made by staff to pick up off floor and did not succeed. Pulled men from several departments, put blanket under and used eight staff people to pick up and [put] patient to bed." The defendant's position on this incident is that its personnel did not drop the plaintiff, its "personnel had some difficulty in keeping McGraw on his feet[.]"

showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

It is through the above legal principles that we decide the merits of this case.

## III.

## DISCUSSION

We pointed out in *Neary v. Charleston Area Medical Center, Inc.,* 194 W.Va. 329, 334, 460 S.E.2d 464, 469 (1995) that "[w]hen the principles of summary judgment are applied in a medical malpractice case, one of the threshold questions is the existence of expert witnesses opining the alleged negligence." Defendant takes the position that medical expert testimony was mandatory in this case pursuant to W.Va.Code § 55–7B–7 (1986), which provides in relevant part: [7]

> The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court.

In granting the defendant summary judgment in this case, the circuit court did not cite the above statute. The circuit court held that our law required "a violation of the standard of care by a health care provider [8]

be proven by expert testimony[.]" We address the meaning of the above quoted passage from W.Va.Code § 55–7B–7.

### A.

### *West Virginia Code § 55–7B–7*

■ Our traditional rule of statutory construction is set out in syllabus point 2 of *Keen v. Maxey,* 193 W.Va. 423, 456 S.E.2d 550 (1995) as follows:

> " ' "When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute. Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.,* 148 W.Va. 369 [135 S.E.2d 262 (1964) ]." Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield,* 153 W.Va. 210, 168 S.E.2d 525 (1969).' Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia,* 190 W.Va. 416, 438 S.E.2d 596 (1993)."

Our examination of the relevant language of W.Va.Code § 55–7B–7 instructs us that it is without ambiguity and that the legislature has not, as argued by the defendant, mandated that expert testimony be used in medical professional liability cases. " 'Where the language of a statute is plain and unambiguous,

---

7. The full text of W.Va.Code § 55–7B–7 provides:
   The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.

8. W.Va.Code § 55–7B–2(c) sets out the following definition of health care provider:
   'Health care provider' means a person, partnership, corporation, facility or institution licensed by, or certified in, this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, or psychologist, or an officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment.
   The plaintiff has invited this Court to determine whether health care provider, as defined above, includes maids, housekeepers and janitors. We decline to address this issue, as the record nowhere indicates that maids, housekeepers or janitors are actors in this case.

there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein.' Syllabus, *Dunlap v. State Compensation Director,* 149 W.Va. 266 (140 S.E.2d 448) [1965]." Syl. pt. 1, *Kucera v. City of Wheeling,* 153 W.Va. 531, 170 S.E.2d 217 (1969).

▪ We hold that W.Va.Code § 55–7B–7 provides that circuit courts have discretion to require expert testimony in medical professional liability cases.[9] We are aided in our holding that W.Va.Code § 55–7B–7 provides discretionary authority in the use of experts, by our decision in *Neary.* The plaintiff in *Neary* brought a medical professional liability action against the defendant hospital, due to an infection from a back operation. The circuit court in that case granted summary judgment to the defendant, on the basis that the plaintiff could not produce expert testimony that the operation was negligently performed. On appeal the plaintiff contended that expert testimony was not required because the doctrine of res ipsa loquitur applied to the case. Although we cited W.Va. Code § 55–7B–7 in *Neary,* we did not elaborate upon its meaning.

Implicit in our disposition of the *Neary* case, was the fact that W.Va.Code § 55–7B–7 did not mandate expert testimony in medical professional liability cases. If the doctrine of res ipsa loquitur had applied in that case, medical expert testimony would not have been required. We determined that the doctrine of res ipsa loquitur did not apply in *Neary* and that the complexity of the issues in that case required expert testimony. *See also Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991) (doctrine of res ipsa loquitur held not to apply and medical expert testimony needed).

### B.

### Requirement Of Medical Expert

In determining that W.Va.Code § 55–7B–7 provides for discretionary use of expert testi-

mony in medical professional liability cases, "we will not reverse the trial court's decision, in the case before us, unless the ... trial court clearly abused its discretion." *Mayhorn,* 193 W.Va. at 48, 454 S.E.2d at 93. The circuit court's ruling in the instant case, on the issue of expert testimony, presents two matters that must be addressed: (1) was expert testimony necessary in this case; and (2) did the plaintiff in fact have an expert?

▪ We note some general principles that our prior cases have developed in this area. In syllabus point 1 of *Farley* we stated that " '[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.' Syl. pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964)."

▪ In *Totten v. Adongay,* 175 W.Va. 634, 638, 337 S.E.2d 2, 6 (1985), the Court stated that " 'cases may arise where there is such want of skill as to dispense with expert testimony.' " Quoting, in part, Syl., *Buskirk v. Bucklew,* 115 W.Va. 424, 176 S.E. 603 (1934); Syl. pt. 2, *Howell v. Biggart,* 108 W.Va. 560, 152 S.E. 323 (1930). We held in syllabus point 4 of *Totten* that:

> In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence.

*Totten* recognizes what is known as the "common knowledge" exception to expert testimony.

**Was Expert Testimony Necessary In This Case?** The defendant takes the position

---

9. Although the issue was not before us in *Gilman v. Choi,* 185 W.Va. 177, 179, 406 S.E.2d 200, 202 (1990) overruled in part, *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994), we did state in passing that W.Va.Code § 55–7B–7 "*authorizes* a trial court to require

'the testimony of one or more knowledgeable, competent expert witnesses' to establish the applicable standard of care in a medical malpractice action and a defendant's failure to meet that standard, if at issue." (Emphasis added.)

that the common knowledge exception [10] is not applicable here, because "liability is premised upon complex medical management issues involving professional management." We have reviewed cases addressing hospital fall incidents and found that a majority of jurisdictions *do not* require expert testimony in such cases. *See Cockerton v. Mercy Hospital Medical Center,* 490 N.W.2d 856 (Iowa App.1992)(where patient fell while in x-ray room expert testimony was not required on hospital's negligence); *Walker v. Southeast Alabama Medical Center,* 545 So.2d 769 (Ala. 1989)(where bed rail left down contrary to doctor's order and patient fell, no expert testimony required on standard of care); *Edelin v. Westlake Community Hospital,* 157 Ill.App.3d 857, 109 Ill.Dec. 890, 510 N.E.2d 958 (1987)(expert not required where patient falls while leaving hospital, as matter involved administrative duty to provide escort); *Rewis v. Grand Strand General Hospital,* 290 S.C. 40, 348 S.E.2d 173 (1986)(hospital's negligence in allowing patient to fall out of bed did not require expert testimony); *Bennett v. Winthrop Community Hospital,* 21 Mass.App. 979, 489 N.E.2d 1032 (1986)(expert testimony not required where drugged patient not restrained and he fell getting out of bed); *Rice v. Sebasticook,* 487 A.2d 639 (Me.1985) (where patient fell out of chair expert testimony not required on issue of hospital's negligence in allowing patient to sit in chair); *Biggs v. Cumberland County Hospital System, Inc.,* 69 N.C.App. 547, 317 S.E.2d 421 (1984) (where patient is known to be in weakened condition and is left alone in shower, where she falls, expert testimony on standards for nurse's aides not required); *Robbins v. Jewish Hospital of St. Louis,* 663 S.W.2d 341 (Mo.App.1983)(expert testimony not required where bed rails not raised and brain damaged patient fell out); *Washington Hospital Center v. Martin,* 454 A.2d 306 (D.C.App.1982)(mere fact that patient falls in hospital will not normally require expert testimony on hospital's negligence); *Newhall v. Central Vermont Hospital, Inc.,* 133 Vt. 572, 349 A.2d 890 (1975)(expert testimony not required where nurse failed to respond to sedated patient's call and patient got out of bed and fell); *McEachern v. Glenview Hospital, Inc.,* 505 S.W.2d 386 (Tex.Civ.App.1974)(expert testimony not needed where patient fell from table while unattended in emergency room); *Veesart v. Community Hospital Asso.,* 211 Kan. 896, 508 P.2d 506 (1973)(expert evidence not required where elderly patient fell while going to bathroom); *Gold v. Sinai Hospital of Detroit, Inc.,* 5 Mich.App.

---

**10.** Defendant's brief cites two cases requiring expert testimony when patients fell in hospitals. The first case cited was *Murphy v. Schwartz,* 739 S.W.2d 777 (Tenn.App.1986). In *Murphy* the plaintiff fell from a cot in a hospital emergency room. The plaintiff alleged the hospital failed to properly attend to her and to treat her for the injuries she sustained in the fall. The trial court granted summary judgment to the hospital. The Court of Appeals of Tennessee sustained the lower court on the grounds that the plaintiff needed expert testimony to refute the hospital's expert testimony that the standard of care in the examination and treatment of the plaintiff was met. *Murphy* is distinguishable from the instant case in that the defendant herein did not proffer testimony or an affidavit that indicated the standard of care and treatment was met in this case. We add caution on this point. We are not holding that mere submission of such an affidavit, in the context of a hospital fall case, would absolutely require a plaintiff to proffer an expert.

The second case cited by the defendant was *Waatti v. Marquette General Hospital, Inc.,* 122 Mich.App. 44, 329 N.W.2d 526 (1982). In *Waatti* the plaintiff fell from a bed in an emergency room while having an epileptic-type seizure. The trial court directed a verdict for the hospital on the grounds that the plaintiff failed to present expert evidence on the applicable standard of care. The Court of Appeals of Michigan sustained the trial court on the grounds that the issue of whether a seizure patient requires constant medical attendance or restraints is a medical management issue that must be established by expert testimony. *Waatti* is distinguishable on several grounds from the instant case. First, *Waatti* involved a seizure patient and the plaintiff in the instant matter does not suffer that affliction. Next, and most importantly, the expert proffered by the plaintiff in the instant case opined that the hospital met the standard of care for observing the plaintiff during the early morning hours of May 12; and that the hospital had no reason to believe that the plaintiff had to be restrained by leg or body straps. As we discuss in the main text, another standard of care was at issue in this case. *See also Hodo v. General Hospitals of Humana, Inc.,* 211 Ga.App. 6, 438 S.E.2d 378 (1993)(expert testimony required where patient falls while being evaluated for capacity to walk with prosthesis); *Reifschneider v. Nebraska Methodist Hospital,* 222 Neb. 782, 387 N.W.2d 486 (1986)(the need for restraints on a patient in an emergency room requires expert testimony).

368, 146 N.W.2d 723 (1966)(where patient fell from bed after warning nurse she was dizzy and nurse assured her she would brace her, no expert testimony required).

■ In *Cramer v. Theda Clark Memorial Hospital*, 45 Wis.2d 147, 172 N.W.2d 427, 428 (1969) the Wisconsin Supreme Court articulated the rationale used by jurisdictions that generally do not require expert testimony in hospital fall cases:

> Courts generally make a distinction between medical care and custodial care or routine hospital care. The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require.... If the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary.... But it does not follow that the standard of all care and attention rendered by nurses or by a hospital to its patients necessarily require proof by expert testimony. *The standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard.*

(Citations omitted)(emphasis added).

■ We find the reasoning of *Cramer* persuasive and consistent with the direction of our law in this area. We noted in syllabus point 3 of *Utter v. United Hospital Center, Inc.*, 160 W.Va. 703, 236 S.E.2d 213 (1977) that " '[a] hospital owes to one who is a patient therein a duty to exercise reasonable care in rendering hospital services to the patient and, in the performance of such duty, due regard must be given to the mental and physical condition of the patient of which the hospital, in the exercise of reasonable care, should have knowledge.' " Quoting, Syl. pt. 2, *Duling v. Bluefield Sanitarium, Inc.*, 149 W.Va. 567, 142 S.E.2d 754 (1965). Although the defendant has contended on appeal that complex management issues are involved in this case, the defendant has not articulated such issues. Because the circuit court erroneously assumed that our law makes it mandatory that expert testimony be proffered in all medical professional liability cases, the court did not make a finding on whether complex management issues existed in this case which would necessitate expert testimony. On remand the circuit court is directed to determine, before the trial of this case, whether complex management issues are involved in the May 21 incident only. As we explain below, the May 12 incident where Mr. McGraw fell out of his hospital bed is ripe for trial on the merits.

■ **Did The Plaintiff In Fact Have An Expert?** The record indicates that the plaintiff was prepared to proffer Dr. Raymond Bruce Henthorn as an expert in this case on the standard of care. Dr. Henthorn was deposed during discovery on November 21, 1994. His deposition was considered by the circuit court during the summary judgment proceeding. The circuit court interpreted Dr. Henthorn's testimony to mean that the defendant met the standard of care in this case. Therefore, the plaintiff had no expert.[11] We are not convinced that the circuit court's finding is correct. Dr. Henthorn was

---

11. The circuit court made the following findings regarding Dr. Henthorn:

1. That Plaintiff's only expert on the standard of care, Dr. Raymond Bruce Henthorn, testified in his deposition taken on November 21, 1994, that if an incident report was filled out by the hospital's personnel indicating that the physician was notified concerning the incident of May 11, 1991 (early morning of May 12, 1991), when the patient was found sitting on the floor of his room, the hospital would have met the standard of care in its care and treatment of the Plaintiff.

2. That, unbeknownst to Dr. Henthorn at the time of his testimony, an incident report was, in fact, filled out concerning said incident by Deborah Marshall, R.N., as reflected in the Affidavits of Linda Culp, Vice President of St. Joseph's Hospital and Deborah Marshall, R.N., filed in support of St. Joseph's Hospital of Parkersburg's Motion for Summary Judgment.

3. That the incident report reflects that Dr. Reddy, the Plaintiff's physician, was notified of the incident that morning.

4. That the Plaintiff therefore is unable to produce expert testimony as to any violation of the standard of care by the Hospital and its agents, servants and employees concerning the care and treatment of the Plaintiff, Robert S. McGraw.

questioned at length regarding two issues involving plaintiff's fall on May 12:(1) Did the defendant violate the standard of care when the plaintiff fell out of bed?; and (2) Did the defendant violate the standard of care in not timely diagnosing the injuries plaintiff may have sustained in falling out of bed?

With regard to whether the defendant violated the standard of care when the plaintiff fell out of bed, Dr. Henthorn was questioned in detail. The record is clear that Dr. Henthorn testified regarding the hospital's standard of care as the same relates to the safety of its patients. Dr. Henthorn specifically stated, with respect to the May 12 incident, that "Hospitals have responsibilities to their patients, side rails, vigilance, whatever the case may be." Dr. Henthorn opined that "anytime a patient injures themself in the hospital by either falling out of bed or something of that regard ... the hospital is at fault." Moreover, Dr. Henthorn testified that the hospital could have prevented Mr. McGraw's injuries by making sure the side rails were up.

The testimony of Dr. Henthorn indicates that he opined that the standard of care in this case, with respect to the May 12 incident, was that of pulling up the side rails on the plaintiff's bed. Dr. Henthorn opined that the defendant violated this standard. The circuit court, however, erroneously found that Dr. Henthorn opined that the defendant met the standard of care in this case. The circuit court reached this unsupported conclusion based upon Dr. Henthorn's testimony regarding the limited issue of the timeliness of diagnosing injuries plaintiff may have sustained in the fall from his bed.[12]

## IV.

### CONCLUSION

The facts surrounding the plaintiff's fall from his bed on May 12, and being dropped on May 21, are susceptible to a reasonable standard of care that can be determined, without an expert, by the jury. However, consistent with W.Va.Code § 55–7B–7, a violation of standard of care shall be established in medical professional liability cases by testimony of an expert witness *if* required by the court. Based upon the current record, the trial judge required an expert for both incidents, though no evidence was proffered which revealed complex management issues involving either incident. We believe evidence of complex management issues was necessary for both issues, in order to justify requiring expert testimony by the plaintiff.

Notwithstanding the lack of evidence of complex management issues in this case, plaintiff produced an expert in Dr. Henthorn, who clearly testified that defendant violated the standard of care it owed to plaintiff as a result of plaintiff's May 12 fall. Dr. Henthorn has determined a standard of care for the May 12 incident and opined that the defendant violated that standard. Therefore, the circuit court was clearly wrong in ruling

---

**12.** Dr. Henthorn's testimony regarding the issue of timeliness of diagnosis was as follows:

    Q. Do you have an opinion as to whether or not the nurses violated the standard of care or the other hospital personnel *in any other respect* other than the finding him at three, a.m., on the floor?

    A. It's my opinion that the nurses should have filled out an incident report.

    . . . .

    Q. Why do you say that?

    A. I feel that if an incident report would have been filled out that it would have been more—that if it had been known that Mr. McGraw had an injury, then when he developed neurological symptoms that the information would have been able to be used to come up with a more timely diagnosis.

    . . . .

    Q. ... [Y]ou're not aware then, are you, that an incident report was, in fact, filled out at three, a.m., on May [12]th—regarding the three, a.m., May [12]th, 1991, incident, are you?

    A. No, I'm not.

    Q. And it was, then you would have no—would have the opinion that the personnel at St. Joseph's Hospital followed the standard of care with regard to that incident, wouldn't you?

    A. As long as it included in that that the nurse supervision also made the physician aware of it.

    Q. Okay. But assuming that the report reflects that the physician was made aware and there was an incident report filled out concerning that May [12]th, 1991, incident when the patient was sitting on the floor, it would be your opinion that the hospital met the standard of care?

    A. Yes.

that the plaintiff did not have an expert on the standard of care, with respect to the May 12 incident. As to the May 21 incident, the trial court may find at a pretrial hearing that expert testimony is necessary on this incident, should the defendant proffer satisfactory evidence that this incident involved complex management issues.

Therefore, we hold that the circuit court erred in granting defendant summary judgment on the grounds that plaintiff had no medical expert to show the defendant violated the standard of care. This case is reversed and remanded for a determination by the trial court consistent with this opinion.

Reversed and Remanded.

MAYNARD, Justice, dissenting:

I respectfully dissent because I disagree with the majority's conclusion that the facts surrounding the alleged negligence presented in this case are susceptible to a reasonable standard of care that can be determined by the jury without an expert.

As noted in Syllabus Point 5 of the majority opinion, "[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Of course, there is an exception to every rule and the exception to this rule is known as the "common knowledge" exception, which is duly noted in Syllabus Point 6 of the majority opinion. Although the common knowledge exception was originally crafted to be used only "in rare cases," *Totten v. Adongay*, 175 W.Va. 634, 639, 337 S.E.2d 2, 7 (1985), the majority here expands it to ridiculous proportions.

While the appellant apparently relied on three incidents of alleged negligence in bringing his complaint, it appears the only incident which suggested a fall and which merited consideration by the appellant's expert was the finding of the appellant on the floor at 3:00 a.m. on May 12, 1991. In concluding that the common knowledge exception applies to this incident, the majority relies on several hospital fall cases from other jurisdictions and the rationale used by these jurisdictions as it was articulated by

the Wisconsin Supreme Court. However, the majority failed to focus on the words of our common knowledge exception as the exception is stated in *Totten*. It is clear that there are only two situations in which the common knowledge exception applies. These situations are "where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience[.]" Syllabus Point 4, *Totten, supra.* I believe that neither situation was present in this case. Instead, expert testimony was necessary here to demonstrate that there was a failure on the part of St. Joseph's Hospital to properly observe and restrain the appellant in order to prevent him from falling out of bed. Certainly, the proper procedure for evaluating a patient's susceptibility to falling in the absence of restraints and in light of the patient's present medical condition, medical history, degree of medication, etc., is an issue of medical management to be established by expert testimony. This is not something that lay jurors would immediately understand, based on common knowledge and experience.

In *Waatti v. Marquette General Hospital, Inc.*, 122 Mich.App. 44, 329 N.W.2d 526 (1982) the court held that expert testimony was necessary to establish whether a seizure patient required constant medical attention or restraint in order to prevent a fall. The court stated:

Plaintiffs next assert that expert testimony was not required because only issues of ordinary negligence were presented. They claim that to leave a seizure patient unattended with the hospital bed's side rails down is so obviously negligent as to present issues cognizable by an ordinary layman. We disagree. Whether a seizure patient requires constant medical attendance or restraints is an issue of medical management to be established by expert testimony.

*Id.*, 329 N.W.2d at 528. (Citations omitted).

Similarly, in *Murphy v. Schwartz*, 739 S.W.2d 777 (Tenn.App.1986), a husband and wife filed a medical malpractice suit alleging, in part, that the wife fell from an emergency

room cot because hospital physicians failed to properly attend to her. No expert testimony was offered by the plaintiffs. The trial court granted summary judgment in favor of the health care providers and the appellate court affirmed, noting that:

There is a "common knowledge" exception to the general rule, that is, the medical negligence is as blatant as a "fly floating in a bowl of buttermilk" so that all mankind knows that such things are not done absent negligence.... We see little difference in matters of medical malpractice between the question of the applicability of *res ipsa* at the close of a plaintiff's proof and the common knowledge exception to the expert medical proof requirement in a summary judgment before trial. It seems to us that the inference of negligence obtained by the application of *res ipsa* which creates a jury issue and the common knowledge exception to the requirement of expert testimony in summary judgments are just about Siamese twins in that both require that it be evident to all, that is judicial notice be taken, that the injury complained of does not ordinarily occur absent negligence.

*Id.,* 739 S.W.2d at 778–79 (Citation omitted). In this case, I would adopt the "fly floating in a bowl of buttermilk"[1] test and thereby properly limit the common knowledge exception to the expert witness requirement to those rare cases in which it belongs.

Also, I disagree with the majority's characterization that Dr. Henthorn "opined that the standard of care in this case, with respect to the May 12 incident, was that of pulling up the side rails on the plaintiff's bed," and that the hospital violated this standard. A review of the record reveals that Dr. Henthorn testified that, based upon the records, there was no reason to suspect, prior to 3:00 a.m. on May 12, 1991, that the appellant was going to fall or be found lying in the floor in the middle of the night, and there was no reason for the nurses to have taken any extraordinary measures in the additional monitoring or restraining of the appellant. As noted in

note 12 of the majority opinion, when asked if, in his estimation, the hospital met the standard of care, Dr. Henthorn replied "yes". Therefore, I agree with the circuit court that Dr. Henthorn testified that it was his opinion that the hospital met the applicable standard of care.

For the reasons stated above, I believe that the circuit court was correct in granting summary judgment on behalf of St. Joseph's Hospital. This is clearly a case in which expert testimony was needed, but no such testimony was, in effect, provided. Therefore, the appellant failed to produce the evidence essential to his case. In *Jividen v. Law,* 194 W.Va. 705, 712–13, 461 S.E.2d 451, 458–59 (1995) this Court stated:

In *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we clarified our view of summary disposition, in part, to disabuse litigants and circuit courts of the erroneous notion that West Rule of Civil Procedure 56 had ceased to exist. In that same vein, we recently stated that "[t]o the extent that our prior cases implicitly have communicated a message that Rule 56 is not to be used, that message, hereby, is modified." *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995). (emphasis added). Rule 56 was incorporated into West Virginia civil practice for good reason, and circuit courts should not hesitate to summarily dispose of litigation where the requirements of the Rule are satisfied. (Footnote omitted).

Because the appellant failed to produce an expert witness to testify that St. Joseph's Hospital failed to conform to the applicable standard of care, I believe there was no genuine issue of fact which warranted a trial on the merits. Consequently, I believe the circuit court did not err in granting the appellee's motion for summary judgment.

Finally, I note that this case is governed by the Medical Professional Liability Act, W.Va.Code § 55–7B–1 *et seq.* W.Va.Code § 55–7B–1 (1986) provides in part:

---

1. This colorful but apt language comes from a Tennessee case, as cited. Since coming to this Court, I have learned to have a genuine appreci-

ation for Tennessee opinions as a wonderful source of common sense and rational rules.

The Legislature hereby finds and declares that the citizens of this state are entitled to the best medical care and facilities available and that health care providers offer an essential and basic service which requires that the public policy of this state encourage and facilitate the provision of such service to our citizens ...

That it is the duty and responsibility of the Legislature to balance the rights of our individual citizens to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers *who can themselves obtain the protection of reasonably priced and extensive liability coverage;*

*That in recent years, the cost of insurance coverage has risen dramatically while the nature and extent of coverage has diminished, leaving the health care providers and the injured without the full benefit of professional liability insurance coverage*[.] (Emphasis added).

This Court frustrates the Legislature's policy in medical malpractice actions when it strains to allow such actions to go forward after they were properly disposed of at the circuit court level by a grant of summary judgment. Because I believe this to be the case here, I dissent.