544 S.E.2d 905

Edward L. DANIEL, Plaintiff
Below, Appellant,

v.

CHARLESTON AREA MEDICAL CEN-
TER, INC., A West Virginia Corpora-
tion, and John Doe, Defendants Below,
Appellees.

No. 28463.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 6, 2001.

Decided March 8, 2001.

Concurring Opinion of Justice
Davis March 8, 2001.

John R. Mitchell, Sr., E. Dixon Ericson, John R. Mitchell, L.C., Charleston, West Virginia, Attorneys for the Appellant.

Crystal S. Stump, Swartz & Stump, L.C., Charleston, West Virginia, Attorney for the Appellee.

ALBRIGHT, Justice:

Appellant Edward M. Daniel appeals from the April 5, 2000, decision of the Circuit Court of Kanawha County, granting summary judgment to Appellee Charleston Area Medical Center, Inc. ("CAMC") in a negligence action through which Appellant alleges injuries resulting from a wheelchair in disrepair. Appellant asserts that the trial court failed to permit him an opportunity required by the provisions of the West Virginia Medical Professional Liability Act (hereinafter referred to as the "Act" or the "Medical Liability Act"), West Virginia Code §§ 55–7B–1 to –11 (1986) (Repl.Vol.2000), to locate and identify an expert witness. We conclude that the circuit court's grant of summary judgment was premature, given its failure to expressly provide Appellant with a time period for identifying an expert witness subsequent to the court's determination that an expert witness was required by the facts of the case. Accordingly, we reverse.

## I. Factual and Procedural Background

While recovering from heart surgery at CAMC on February 11, 1997, Appellant was placed in a wheelchair for purposes of transporting him from the recovery area of the hospital back to his room. After Appellant was seated in the wheelchair, the back of the reclining chair broke causing him to fall backwards. As a result, Appellant allegedly suffered certain injuries, including emotional distress. Appellant filed a civil action in the circuit court on February 11, 1999, through which he sought to recover damages in connection with the wheelchair incident.

Appellant states in his brief that neither he "nor the defendant retained experts for trial purposes" "[a]s the case was not complex and the damages claimed were not large." On January 3, 2000, CAMC moved for summary judgment on the grounds that the Act required Appellant to use expert testimony to establish that it had deviated from the standard of care and that this deviation proximately caused Appellant's injuries. Following oral argument on the issue of summary judgment, the trial court ruled that expert testimony was not required under the facts of this case to establish a deviation from the standard of care with regard to the act of negligence—the wheelchair fall—but that an expert would be necessary to establish that this act of negligence was the proximate cause of Appellant's physical and emotional injuries. Based on Appellant's admission that he had "failed to secure an expert to demonstrate proximate cause within the time frame allotted by the Court's scheduling Order" combined with its determination that an expert was necessary, the trial court granted summary judgment to CAMC. Appellant seeks a reversal of this grant of summary judgment.

## II. Standard of Review

As with all summary judgment rulings, our review is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) (holding that "[a] circuit court's entry of summary judgment is reviewed *de novo*"). In syllabus point two of *Painter* we recognized further:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter v. Peavy*, 192 W.Va. at 190, 451 S.E.2d at 756. We review this case with these principles in mind.

## III. Discussion

Appellant argues that the trial court abused its discretion in not failing to adhere

to the time allowances contained in the Medical Liability Act for designation of expert witnesses. Acknowledging that "neither the plaintiff nor the defendant in this case precisely followed the procedure established by Section 6 of the Act,"[1] Appellant maintains that "the intent of this Section is to ensure that the party having the burden of proof shall be advised, in advance of trial, whether expert testimony will be required." Since Appellant "had proceeded in the good faith belief that expert testimony was unnecessary" until the trial court's summary judgment ruling, he suggests that it would be patently unfair not to permit him additional time to obtain the necessary expert witness.

The Medical Liability Act, in a section dealing with pretrial procedures, addresses the issue of expert witnesses, stating that:

(a) In each medical professional liability action against a health care provider, not less than nine nor more than twelve months following the filing of answer by all defendants, a mandatory status conference shall be held at which, in addition to any matters otherwise required, the parties shall:

(1) Inform the court as to the status of the action, particularly as to the identification of contested facts and issues and the progress of discovery and the period of time for, and nature of, anticipated discovery; and

(2) *On behalf of the plaintiff, certify to the court that either an expert witness has or will be retained to testify on behalf of the plaintiff as to the applicable standard of care or that under the alleged facts of the action, no expert witness will be required. If the court determines that expert testimony will be required, the court shall provide a reasonable period of time for obtaining an expert witness and the action shall not 'be scheduled for trial, unless the defendant agrees otherwise, un-*

*til such period has concluded. It shall be the duty of the defendant to schedule such conference with the court upon proper notice to the plaintiff.*

W.Va.Code § 55–7B–6(a)(1), (2) (emphasis supplied).

Opposing the suggestion that the intent of the Medical Liability Act requires additional time for the naming of Appellant's expert, CAMC argues that Appellant had sufficient time prior to the summary judgment ruling to retain and disclose an expert. Moreover, CAMC stresses that Appellant has failed to comply with the time constraints specifically set forth in the circuit court's scheduling order with regard to the naming of expert witnesses. Based on the fact that Appellant failed to locate and hire an expert witness, despite being subject to the mandates of the scheduling order, CAMC contends that Appellant is not entitled to the additional time which it now seeks for expert retention purposes. In CAMC's opinion, the procedures of the Act with regard to expert retention are self-evident and do not hinge upon the order of a trial court. Since Appellant had an obligation from day one to retain an expert for proof of standard of care, CAMC reasons that no additional time should now be allotted Appellant.

■ In syllabus point eight of *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389 (1997), we made clear that the issue of expert witnesses is within the trial court's discretion under the Medical Liability Act: "A trial court is vested with discretion under W.Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." Pursuant to this statutory grant of discretion, the trial court made a determination that an expert witness, while not required on the issue of standard of care,[2] was required on the issue of proximate cause. In support of its decision to require

---

1. By this statement, Appellant appears to be referring to the Medical Liability Act's requirement that a "mandatory status conference" be held within a specified period of time following the filing of the defendant's answer to the complaint. W.Va.Code § 55–7B–6(a). The Act expressly places the duty for the scheduling of this conference upon the defendant—CAMC in this case. W.Va.Code § 55–7B–6(a)(2).

2. The trial court opined in its summary judgment ruling that: "The jury can infer from its experience that the placing of a patient, recovering from heart surgery and still under the effects of anaesthesia, in a defective wheelchair which then collapses allowing the patient to fall violates any standard of due care."

an expert on proximate cause, the trial court cited this Court's ruling in *Short v. Appalachian OH–9, Inc.*, 203 W.Va. 246, 507 S.E.2d 124 (1998), in which we held that "the circuit court has the discretion to determine whether the plaintiff is required to obtain an expert witness concerning both the standard of care applicable to the emergency medical service provider and whether the alleged breach of that standard of care proximately caused the death of the infant. . . ." *Id.* at 247, 507 S.E.2d at 125, syl. pt. 5, in. part.

■ The Appellant disagrees with the trial court's decision to immediately grant summary judgment to CAMC without granting him an opportunity to locate an expert witness on the proximate cause issue.[3] Because this case has been determined to fall within the parameters of the Medical Liability Act,[4] the provisions of the Act necessarily control our decision in this case. In section six, which governs the issue of expert retention, the Medical Liability Act contemplates that the issue of experts will be resolved during a mandatory status conference in requiring the plaintiff to "certify to the court that either an expert witness has or will be retained to testify . . . as to the applicable standard of care or that under the alleged facts of the action, no expert witness will be required." W.Va.Code § 55–7B–6(a)(2). The final determination regarding the need for an expert witness, as the Act makes clear, is a matter for the trial court: "If the *court determines that expert testimony will be required,* the court shall provide a reasonable period of time for obtaining an expert witness[.]" *Id.* (emphasis supplied).

■ In its summary judgment ruling, the trial court reasoned:

The plaintiff failed to identify any expert for purposes of establishing proximate cause on or before December 10, 1999, which is the date demanded by the Court's scheduling Order. Moreover, the plaintiff

has articulated a strategy that would rely wholly upon lay testimony to establish all elements of the claim. The Court, however, concludes the claim cannot be established without expert testimony. Accordingly, this Court can only conclude the plaintiff failed to make a sufficient showing on the element of proximate cause to support his claim.

Not until this ruling of the trial court was it clear that the action would be resolved pursuant to the provisions of the Medical Liability Act or that an expert witness was required. While West Virginia Code § 55–7B–6(a)(2) does not expressly address the use of expert witnesses for proximate cause purposes, the discretion vested in the trial judge by this provision to make determinations regarding the need for expert witness testimony coupled with our prior decision in *Short* compels the conclusion that upon a trial court's determination that an expert witness is required to prove standard of care or proximate cause in an action brought under the Medical Liability Act, a reasonable period of time must be provided for retention of an expert witness. *See Short,* 203 W.Va. at 247, 507 S.E.2d at 125, syl. pt. 5.

Through its grant of summary judgment simultaneous with its decision concerning the need for an expert on the issue of proximate cause, the trial court failed to comply with the mandatory language of West Virginia Code § 55–7B–6(a)(2), which requires the provision of a "reasonable period of time" for expert retention. Logic suggests that this mandate of requiring a "reasonable period of time" must *follow* any determination by a trial court regarding the need for an expert, and not *precede* such determination. Because the lower court failed to accord Appellant any time whatsoever following its decision regarding the need for an expert witness on proximate cause, we conclude that the lower court erred in granting summary judgment to CAMC.

---

**3.** We do not, by our opinion in this case, intimate any approval or disapproval of the circuit court's decision on the underlying question of whether an expert witness was required on the causation issue in the instant case. We observe that expert testimony on causation is not automatically required in cases involving emotional distress. *See, e.g., Tanner v. Rite Aid of W.Va., Inc.,* 194 W.Va. 643, 461 S.E.2d 149 (1995).

**4.** The trial court determined in its April 5, 2000, ruling that the cause of action falls under the Medical Liability Act "because . . . [it] is a tort committed by health care providers in the course of the plaintiff's health care." *See* W.Va.Code § 55–7B–2(d) (defining medical professional liability under the Act).

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed.

Reversed.

Justices DAVIS and MAYNARD concur.

DAVIS, Justice, concurring:

(Filed March 8, 2001)

This case presented a medical malpractice procedural issue that was of first impression for this Court. Namely, whether the trial court was required to afford the plaintiff a reasonable period of time to retain a medical expert to address the issue of proximate cause. The majority opinion correctly determined, as is set out in Syllabus point 4 of the opinion, that "[u]pon a trial court's determination that an expert witness is required to prove standard of care or proximate cause in an action brought under the West Virginia Medical Professional Liability Act, West Virginia Code §§ 55–7B–1 to 11 (1986) (Repl. Vol.2000), a reasonable period of time must be provided for retention of an expert witness." The majority holding in this case was dictated by statute. I, therefore, concur with the majority decision. I write separately because I believe trial courts and lawyers need additional guidance in understanding and applying the holding in this case.

*Reconciling Rule 16 of the West Virginia Rules of Civil Procedure and the West Virginia Medical Professional Liability Act, W. Va.Code § 55–7B–1*

A scheduling order was entered in this matter pursuant to Rule 16(b) of the West Virginia Rules of Civil Procedure.[1] Pursuant to the scheduling order, the parties were required to identify experts by December 10, 1999. The deadline for expert identification

expired without the plaintiff designating an expert. The trial court ultimately granted summary judgment to CAMC because it determined that Mr. Daniel was required to use a medical expert, but failed to identify one within the time frame of the scheduling order. This Court recently stated that "Rule 16(e) specifically provides that a scheduling order controls litigation 'unless modified by a subsequent order.'" *State ex rel. Crafton v. Burnside,* 207 W.Va. 74, 78, 528 S.E.2d 768, 772 (2000). In *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 161, 451 S.E.2d 721, 727 (1994), we explained "that the circuit court was acting within his discretion ... by refusing to allow [the defendant] to designate experts after the expiration of the deadlines established in the scheduling order." *See also Bartles v. Hinkle,* 196 W.Va. 381, 392, 472 S.E.2d 827, 838 (1996) ("A succession of violations ... indicating a general unwillingness to comply with a court-imposed scheduling order, is enough for us even to justify a default [as a sanction].").

As demonstrated by the foregoing case law, precedent would appear to require affirming the trial court in this case. Indeed, had this not been a medical malpractice case within the confines of W. Va.Code § 55–7B–6, under the Rules of Civil Procedure we would be compelled to affirm the trial court's decision since the court was correct in requiring plaintiff to use an expert. However, the Rule 16(b) scheduling order in this case was qualified by the application of W. Va. Code § 55–7B–6, which, as discussed below, controls the issue of identifying a medical expert in actions for medical professional liability.[2]

---

1. Rule 16(b) provides:
   (b) Scheduling and Planning. Except in categories of actions exempted by the Supreme Court of Appeals, the judge shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference, telephone, mail or other suitable means, enter a scheduling order that limits the time:
   (1) To join other parties and to amend the pleadings;
   (2) To file and hear motions; and
   (3) To complete discovery.
   The scheduling order also may include:
   (4) The date or dates for conferences before trial, a final pretrial conference, and trial; and
   (5) Any other matters appropriate in the circumstances of the case.

A schedule shall not be modified except by leave of the judge.

2. An issue that was not raised by the parties in this case concerns whether the legislature had authority to address civil procedure matters in W.Va.Code § 55–7B–6. This Court has indicated that "[u]nder article [VIII], section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syl. pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988). Further, "[u]nder Article VIII, Section 8 [and Section 3] of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amend-

*(1) The required status conference.* Under W. Va.Code § 55–7B–6(a) a mandatory status conference ·must occur in a medical malpractice case "not less than nine nor more than twelve months following the filing of answer by all defendants[.]" This provision of the statute must be harmonized with Rule 16, which includes no time period specifically designated for holding any type of status conference under Rule 16.

In practice, trial courts should address the § 55–7B–6 mandatory status conference through the Rule 16 scheduling procedure. In other words, the initial scheduling order should provide the date that the court and parties will convene for the mandatory status conference. When this procedure is followed, the problem presented in the instant case should not arise, so long as the status conference is scheduled reasonably prior to the date the parties are required to designate their expert witnesses.[3] This last requirement is elaborated on below.

*(2) Determining the need for medical experts at the required status conference.* When a mandatory status conference is held pursuant to W. Va.Code § 55–7B–6, the statute specifically requires the issue of medical experts be discussed. In this respect, § 55–7B–6(a)(2) expressly requires that during the conference a plaintiff "certify to the court that either an expert witness has or will be retained to testify on behalf of the plaintiff as to the applicable standard of care or that under the alleged facts of the action, no expert witness will be required." The statute also provides that "[i]f the court determines that expert testimony will be required, the court shall provide a reasonable period of time for obtaining an expert witness[.]" These provisions must also be harmonized with the scheduling order entered pursuant to Rule 16(b).

Typically, trial courts will enter an initial scheduling order that establishes the cutoff date for identifying experts, as was done in this case. However, W. Va.Code § 55–7B–6(a)(2) qualifies this practice in the context of medical malpractice cases. Establishing a cutoff date for identifying a medical expert must be done at the mandatory status conference under W. Va.Code § 55–7B–6. As ruled in the instant case, establishing a cutoff date in an initial scheduling order for identifying a medical expert in a medical malpractice case is not controlling.

Also, the statute contemplates a meaningful hearing on the issue of a medical expert. During the conference the parties should be prepared to discuss substantive issues in the

ment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them." Syl. pt. 1, *Stern Brothers, Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977).

In prior decisions of this Court we have approved of specific provisions in the Medical Professional Liability Act, which touched upon procedural matters that fell under the direct constitutional supervisory authority of this Court. In *Robinson v. Charleston Area Medical Center, Inc.*, 186 W.Va. 720, 414 S.E.2d 877 (1991), this Court·held that the legislature could limit noneconomic damages recoverable for medical malpractice. In *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997), we approved of the legislature granting trial courts discretion under W. Va.Code § 55–7B–7 to require expert testimony in medical professional liability cases. However, in *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 49, 454 S.E.2d 87, 94 (1994), we indicated that the legislature could not outline when an expert is qualified to testify in a medical malpractice action. In *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), we approved of the legislature imposing an outside

limit of ten years on the filing of medical malpractice claims, regardless of the date of discovery, unless there is evidence of fraud, concealment, or misrepresentation of material facts by the health care provider.

In my judgment, the procedural issues promulgated in W. Va.Code § 55–7B–6 are not in conflict with Rule 16(b), but rather they supplement the Rule. However, as I indicated, the issue of whether W. Va.Code § 55–7B–6 offends the constitutional authority of this Court to regulate procedural matters in the trial courts of this State was not presented to this us. Thus, this issue is still alive until properly presented to this Court for resolution.

**3.** The statute actually requires "the defendant to schedule such conference." This requirement does not preclude the trial court from setting a date for the status conference in the initial scheduling order. *See* Rule 16(b)(4) ("The scheduling order also may include ... [t]he date or dates for conferences before trial[.]"). If, for some reason, the date for holding the mandatory status conference is not inserted in the scheduling order, then pursuant to W. Va.Code § 55–7B–6(a)(2) the defendant must "schedule such conference with the court upon proper notice to the plaintiff."

case as they relate to medical expert testimony. This is necessary as the trial court must ultimately determine whether to require medical expert testimony. An accurate record of the conference should be made to allow for a meaningful review should a party later challenge the basis of the trial court's decision.

Finally, it must be understood that an initial Rule 16(b) scheduling order may continue to establish a cutoff date for identifying *nonmedical* experts. The mandatory status conference under W. Va.Code § 55–7B–6 applies only to medical experts.

*(3) Other considerations at the mandatory status conference.* It is also required by W. Va.Code § 55–7B–6(a)(1) that, during the status conference, the parties "[i]nform the court as to the status of the action, particularly as to the identification of contested facts and issues and the progress of discovery and the period of time for, and nature of, anticipated discovery[.]" This provision, simply requires updating the trial court on the progress of matters that are ordinarily covered in the scheduling order, except for the issue of medical experts.

With these additional observations, I concur in the decision rendered in this case. I am authorized to state that Justice Maynard joins me in this concurring opinion.