WAATTI v MARQUETTE GENERAL HOSPITAL, INC

Docket No. 58623. Submitted October 13, 1982, at Marquette.—Decided December 8, 1982.

Jacob L. Waatti and his wife, Margaret, brought a medical malpractice action in Marquette Circuit Court against Marquette General Hospital, Inc., U. P. Emergency Physicians, Inc., and Dr. Robert Simon. The action arose out of a fracture of Jacob Waatti's left shoulder suffered during a seizure while Jacob Waatti was being treated in the emergency room of defendant hospital. Plaintiffs alleged that the injury resulted from the failure of the hospital and doctor to properly attend him in the emergency room. Plaintiffs called two doctors, neither of whom were qualified as expert witnesses on emergency room procedures. At the close of plaintiffs' proofs, defendants moved for a directed verdict on the basis that plaintiffs had failed to produce any evidence on the applicable standard of care. Plaintiffs were permitted to reopen proofs and introduced the deposition testimony of the head nurse in charge of the emergency room on the date in question. This testimony indicated that seizure patients must be constantly attended. The trial court granted defendants' motion for a directed verdict, Clair J. Hoehn, J. Plaintiffs appeal. *Held:*

1. Since neither of the doctors testifying for plaintiffs had experience in emergency medicine, the plaintiffs failed to establish the requisite standard of care by expert testimony.

2. The nurse was not qualified to give expert testimony as to

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence §§ 7, 9.

[1, 4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 348.

[1] 75 Am Jur 2d, Trial § 534.

[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 354.

Medical malpractice: necessity and sufficiency of showing medical witness' familiarity with particular medical or surgical technique involved in suit. 46 ALR3d 275.

[3] 31 Am Jur 2d, Expert and Opinion Evidence § 105.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 352, 355.

[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 333.

Physicians and surgeons: res ipsa loquitur, or presumption or inference of negligence, in malpractice cases. 82 ALR2d 1262.

the standard of care required of a physician specializing in emergency medicine.

3. The question of whether a seizure patient requires constant attendance or should be kept in restraints is not an issue cognizable by an ordinary layman but rather must be established by expert testimony.

4. Since this injury could have occurred absent anyone's negligence, the mere occurrence of the injury does not permit the inference of negligence.

Affirmed.

1. PHYSICIANS AND SURGEONS — NEGLIGENCE — MEDICAL MALPRACTICE — BURDEN OF PROOF — DIRECTED VERDICTS.

Professional negligence in a medical malpractice case must be established by showing both the appropriate standard of care and a breach of that standard by means of expert testimony; absent such expert testimony, there is no prima facie showing of liability and a directed verdict in favor of the defendant is proper.

2. WITNESSES — EXPERT WITNESSES.

A witness in a medical malpractice case being qualified as an expert by virtue of experience, knowledge, skill, training, or education must in all cases explicitly state his familiarity with the appropriate standard of care applicable in a given situation.

3. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — EXPERT TESTIMONY — NURSES.

A nurse is not qualified to give expert testimony as to the standard of care required of a licensed physician specializing in the practice of emergency medicine.

4. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE — NEGLIGENCE — EXPERT TESTIMONY.

The question of whether a seizure patient requires constant medical attendance or restraints is an issue of medical management to be established by expert testimony.

5. NEGLIGENCE — RES IPSA LOQUITUR.

Michigan has not formally adopted the doctrine of res ipsa loquitur; however, a plaintiff in a medical malpractice action is entitled to an inference of negligence upon a showing that: (1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the event was caused by an agency or instrumentality within the exclusive control of the defendant, (3) the event was not due to any voluntary action or contribution by plaintiff, and (4) evidence of the true explana-

tion of the event was more readily accessible to the defendant than to the plaintiff.

*Wisti & Jaaskelainen, P.C.* (by *Michael E. Makinen*), for plaintiffs.

*Bridges & Collins* (by *E. Nichols Bridges*), for Marquette General Hospital, Inc.

*Weber, Swanson & Vicary, P.C.* (by *John R. Weber*), for U. P. Emergency Physicians, Inc.

*Vairo, Mechlin, Tomasi, Johnson & Manchester* (by *Jeryl A. Manchester*), for Dr. Robert Simon.

Before: D. F. WALSH, P.J., and ALLEN and M. F. CAVANAGH, JJ.

PER CURIAM. Plaintiffs brought this malpractice action based on a fracture which plaintiff Jacob Waatti suffered while being treated in the emergency room of Marquette General Hospital. The trial court directed a verdict in favor of all the defendants at the close of the plaintiffs' proofs on the ground that the plaintiffs had failed to present evidence of the applicable standard of care and thus had failed to present a question for the jury. Plaintiffs appeal by right, and we affirm.

Plaintiff Jacob Waatti suffered an epileptic-type seizure in his home and was taken by ambulance to Marquette General Hospital where defendant Dr. Robert Simon, an employee of the U. P. Emergency Physicians, was in charge of the emergency room. When plaintiff arrived at the hospital, he was given anti-convulsive medication and underwent X-rays. At that time, he had no fractures. After the plaintiff regained consciousness, defendant Simon called a neurologist on the regular hospital staff to examine him. During this consul-

tation, plaintiff sat on the edge of the bed with the side rails down. Plaintiff was then informed that he could return home with medication or be admitted to the hospital; plaintiff chose to remain where he was. Approximately two hours later he suffered a second seizure and was taken to the intensive care room where X-rays showed a fracture of the left shoulder.

Dr. Donald Elzinga testified that he subsequently treated the plaintiff for his fracture. Dr. Elzinga is an orthopedic surgeon, and he opined that the fracture occurred when the plaintiff's second seizure caused his muscles to forcefully contract, ramming him against the side rails of the bed. Dr. Elzinga was not qualified by the trial court as an expert in emergency medicine and indicated that his experience with treatment of seizure-type patients was limited to the orthopedic floor.

Plaintiff's fractured shoulder was also treated by Dr. M. Y. Kiani, an orthopedic surgeon, who testified that breaks of the type suffered by the plaintiff usually occurred in falls, but they could be caused by the sheer force of the muscle contractions occurring in the seizures. Dr. Kiani was never qualified as an expert witness by the lower court and was never asked about the standard of care applicable to emergency room treatment of seizure patients.

At the close of the plaintiffs' case, the defendants moved for a directed verdict because the plaintiffs had not presented any evidence regarding the applicable standard of care. Plaintiffs' motion to reopen the proofs was granted, and plaintiffs introduced the deposition testimony of the head nurse in charge of the emergency room on the date of the injury. This testimony indicated

that seizure patients must be constantly attended and the side rails to their beds left raised.

We find a directed verdict in favor of the defendants was proper. In a malpractice case expert testimony is required to establish professional negligence by showing both the appropriate standard of care and breach of that standard. Absent expert testimony, there is no prima facie showing of liability, and a directed verdict against the plaintiff is proper. *Wallace v Garden City Osteopathic Hospital,* 111 Mich App 212, 216; 314 NW2d 557 (1981). Although a witness may qualify as an expert by virtue of experience, knowledge, skill, training, or education, he must in all cases explicitly state his familiarity with the appropriate standard of care applicable in a given situation. *Haisenleder v Reeder,* 114 Mich App 258; 318 NW2d 634 (1982).

In this case neither physician who testified was ever asked whether he was familiar with the standard of care applicable to the emergency room treatment of a seizure patient who has been given the option of returning home by his or her physician. The record does not show that either of the physicians had any experience in emergency medicine. Absent evidence as to the standard of care for emergency room treatment, the plaintiffs' evidence was insufficient to create an issue of fact. *Haisenleder v Reeder, supra.*

We reject the plaintiffs' claim that the head nurse's deposition testimony established the requisite standard of care. Not only was the nurse not questioned as to what standard was required in the particular facts of this case, but he was also not qualified to give expert testimony as to the standard required of a licensed physician specializing in the practice of emergency medicine. See,

*e.g., Stanek v Bergeon,* 89 Mich App 283; 279 NW2d 296 (1979) (testimony of an X-ray technician held not admissible to establish the standard of care appropriate to a physician).

Plaintiffs next assert that expert testimony was not required because only issues of ordinary negligence were presented. They claim that to leave a seizure patient unattended with the hospital bed's side rails down is so obviously negligent as to present issues cognizable by an ordinary layman. *Wilson v Stilwill,* 411 Mich 587; 309 NW2d 898 (1981). We disagree. Whether a seizure patient requires constant medical attendance or restraints is an issue of medical management to be established by expert testimony. *Wilson v Stilwill, supra; Starr v Providence Hospital,* 109 Mich App 762; 312 NW2d 152 (1981).

Finally, the plaintiffs were not entitled to an inference of negligence, *Neal v Friendship Manor Nursing Home,* 113 Mich App 759; 318 NW2d 594 (1982), merely by proving an injury. Although Michigan has not formally adopted the doctrine of *res ipsa loquitur,* a plaintiff in a malpractice action is entitled to an inference of negligence if he can show the following four elements:

1. The event is of a kind which does not normally occur absent negligence;

2. The event is caused by an instrumentality within the exclusive control of the defendant;

3. The event is not due to any voluntary action by the plaintiff;

4. The explanation is more accessible to the defendant than to the plaintiff.

*Neal v Friendship Manor Nursing Home, supra,* pp 764-765.

Here, however, both doctors testified that the

plaintiff's fracture could have been caused by the sheer force of his seizure. Clearly, this occurrence could naturally have occurred absent anyone's negligence. The mere occurrence of an injury does not permit the inference of negligence. *Wilson v Stilwill, supra,* p 608.

The last issue, raised by the defendants, is not properly before us since the defendants failed to file a cross-appeal.

Affirmed. Defendants may tax costs.