*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GIORGIO WEBSTER,

Plaintiff-Appellee,

v

DR. JEFFREY OSGUTHORPE and SUMMIT
ORAL AND MAXILLOFACIAL SURGERY, PC,

Defendants-Appellants.

UNPUBLISHED
December 21, 2023

Nos. 362891; 363747
Macomb Circuit Court
LC No. 2019-003783-NH

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, defendants, Dr. Jeffrey Osguthorpe and Summit Oral and Maxillofacial Surgery, P.C. ("Summit Oral Surgery"), appeal as of right a judgment for plaintiff, entered after a jury trial, awarding plaintiff damages of $565,000 in this dental malpractice action, and additionally awarding plaintiff attorney fees of $169,512.54 as case evaluation sanctions "under the pre-amendment version of MCR 2.403(O)." We reverse and vacate the award of case evaluation sanctions, but affirm in all other respects.

## I. BACKGROUND

This action arises from an excisional biopsy procedure performed by Dr. Osguthorpe on plaintiff at the offices of Summit Oral Surgery in Clinton Township on April 20, 2018. During the procedure, plaintiff experienced hemorrhaging from an arteriovenous malformation (AVM) of the left lower mandible. Plaintiff was transported to Henry Ford Macomb Hospital and then airlifted to Henry Ford Hospital in Detroit where he underwent an emergency embolization procedure.

Plaintiff filed this action for medical malpractice against Dr. Osguthorpe and asserted that Summit Oral Surgery was vicariously liable for Dr. Osguthorpe's malpractice. Following a three-day trial, a jury found that defendants were liable for malpractice and awarded plaintiff $68,000 in economic damages, $1,375,000 in past noneconomic damages, and $1,307,000 in future noneconomic damages. Under MCL 600.1483, the trial court capped the noneconomic damages at $497,000, and awarded plaintiff a judgment for $565,000.

-1-

Defendants moved for judgment notwithstanding the verdict or remittitur, arguing that plaintiff failed to present expert testimony establishing the applicable standard of care, and also failed to show that any breach of the standard of care by Dr. Osguthorpe was a proximate cause of plaintiff's injuries. In particular, defendants argued that the testimony of plaintiff's expert, Dr. Steven Wolf, failed to establish that he was familiar with the applicable standard of care and did not establish the source of his knowledge of the applicable standard of care. Defendants further argued that Dr. Wolf's testimony indicated that plaintiff would have experienced the same major bleeding episode regardless of what procedure Dr. Osguthorpe performed, and therefore, Dr. Osguthorpe's alleged malpractice was not a proximate cause of plaintiff's injuries. Defendants also argued that they were entitled to remittitur because the evidence did not support the jury's awards of damages. The trial court denied defendants' motion.

Plaintiff also moved for attorney fees as case evaluation sanctions under former MCR 2.403(O)(1). Although trial was held in April 2022, and MCR 2.403 had been amended, effective January 1, 2022, to eliminate case evaluation sanctions, plaintiff requested attorney fees under the preamendment version of MCR 2.403(O)(1) to avoid an injustice because plaintiff had accepted the case evaluation award and defendants rejected the award and refused to engage in settlement discussions before trial. The trial court determined that justice required that it apply former MCR 2.403(O) because plaintiff proceeded to trial in reliance on the former rule. Accordingly, it awarded plaintiff $169,512.54 in attorney fees as case evaluation sanctions.

## II. MEDICAL MALPRACTICE

Defendants argue that plaintiff failed to present evidence to establish the applicable standard of care for an oral surgeon, and also failed to show that any alleged breach of the standard of care was a proximate cause of plaintiff's injuries, and therefore, the trial court erred by denying their motion for judgment notwithstanding the verdict. We disagree.

Preliminarily, we disagree with plaintiff that defendants waived their challenges to the adequacy of Dr. Wolf's testimony on the issues of the standard of care and proximate cause by failing to object to his testimony on these grounds at trial. Under Michigan's "raise or waive" rule, an issue not raised in the trial court is considered waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2. In this case, however, defendants raised their challenges to the substance of Dr. Wolf's testimony before the trial court in their motion for judgment notwithstanding the verdict, thereby preserving the issue. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Although plaintiff argues that defendants did not object to Dr. Wolf's testimony when it was offered at trial, defendants were not challenging the *admissibility* of Dr. Wolf's testimony in their motion for judgment notwithstanding the verdict, but rather, were challenging whether it was legally sufficient to establish a breach of the applicable standard of care and causation. Even if defendants' failure to object to Dr. Wolf's testimony at the time it was offered at trial could be viewed as a waiver of any claim that the testimony should not have been admitted, it does not operate as a waiver of any argument that the testimony was not legally sufficient to establish a breach of the applicable standard of care and causation. Because defendants raised these arguments below, and they were addressed and decided by the trial court, they are preserved.

This Court reviews a trial court's decision on a motion for judgment notwithstanding the verdict de novo. *Dorsey v Surgical Institute of Mich*, *LLC*, 338 Mich App 199, 223; 979 NW2d 681 (2021). This Court must review the evidence and all legitimate inferences arising from the evidence in the light most favorable to the nonmoving party. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). Judgment notwithstanding the verdict is appropriate only if the evidence so viewed fails to establish a claim as a matter of law. *Id.*

In a medical malpractice action, the plaintiff bears the burden of presenting evidence to satisfy the following elements:

> (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. [*Estate of Horn v Swofford, DO*, 334 Mich App 281, 288; 964 NW2d 904 (2020), lv gtd on other grounds 982 NW2d 397 (2022) (quotation marks and citation omitted).]

In this case, defendants argue that plaintiff failed to present evidence to satisfy the first and fourth elements. We disagree.

## A. STANDARD OF CARE

Defendants argue that Dr. Wolf's testimony was not sufficient to establish the applicable standard of care for an oral surgeon because Dr. Wolf did not explicitly state that he was personally knowledgeable and familiar with the standard of care, and he did not explain the source for his knowledge of the applicable standard of care. Viewing Dr. Wolf's testimony and legitimate inferences arising from his testimony, we disagree with defendants' argument.

MCL 600.2912a provides, in pertinent part:

> (1) Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:
>
> \* \* \*
>
> (b) The defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

In *Bahr v Harper-Grace Hosps*, 448 Mich 135, 138; 528 NW2d 170 (1995), our Supreme Court instructed that the standard of care for general practitioners "is that of the local community or similar communities," but the standard of care for a specialist is nationwide.

Defendants rely significantly on this Court's decision in *Waatti v Marquette Gen Hosp, Inc*, 122 Mich App 44; 329 NW2d 526 (1982),[1] in support of their argument. In that case, the plaintiff suffered an epileptic seizure and was transported to a hospital by ambulance. *Id*. at 46. The plaintiff suffered a fractured shoulder while being treated in the hospital emergency room. *Id*. at 47. At trial, the plaintiff presented the testimony of two orthopedic surgeons, one of whom was not qualified as an expert in emergency medicine and testified at trial that his experience with patients suffering seizures was limited to the field of orthopedics. *Id*. at 47. The second witness was not qualified as an expert "and was never asked about the standard of care applicable to emergency room treatment of seizure patients." *Id*. This Court affirmed the trial court's decision to direct a verdict in favor of the defendants for failure to establish the standard of care applicable to the emergency room treatment of a seizure patient. *Id*. at 48. This Court stated that "[a]lthough a witness may qualify as an expert by virtue of experience, knowledge, skill, training, or education, *he must in all cases explicitly state his familiarity with the appropriate standard of care applicable in a given situation*." *Id*. (emphasis added). Defendants rely on the emphasized statement to argue that they were entitled to a directed verdict because Dr. Wolf never expressly announced that he was familiar with the applicable standard of care for an oral surgeon. However, the statement in *Waatti* must be understood in context.

In *Waatti*, not only were the physicians who testified for the plaintiff not asked if they were familiar with the standard of care applicable to the emergency room treatment of a seizure patient, it was apparent from their testimony that they were not familiar with the applicable standard of care. Indeed, one physician admitted that his experience with seizure patients was limited to the field of orthopedics, and the other was not qualified as an expert or asked about the standard of care applicable to the emergency room treatment of seizure patients. These deficiencies in *Waatti* are not present in this case.

Defendants do not dispute that the applicable standard of care in this case is that for an oral surgeon. Although defendants complain that Dr. Wolf did not explicitly state that he was familiar with the standard of care for an oral surgeon, the record discloses that, unlike the testifying experts in *Waatti*, Dr. Wolf had significant experience in the specialty at issue—oral surgery. Further, he was repeatedly asked about the standard of care for an oral surgeon, and he explained what the standard of care required and how he believed that Dr. Osguthorpe breached the standard of care. In other words, Dr. Wolf's familiarity with the standard of care for an oral surgeon was clearly apparent from his testimony.

---

[1] *Waatti* was decided on December 8, 1982. Under MCR 7.215(J)(1), "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." Under MCR 7.215(C)(2), however, "[a] published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." Although *Waatti*, because it was decided before November 1, 1990, is not binding on this Court under MCR 7.215(J)(1), as a published opinion it remains binding on trial courts under MCR 7.215(C)(2). See *Andrusz v Andrusz*, 320 Mich App 445, 457 n 2; 904 NW2d 636 (2017).

Dr. Wolf testified regarding his lengthy experience as an oral surgeon, as well as his educational background and credentials, none of which were challenged by defendants. In particular, Dr. Wolf testified that he has been practicing dentistry in Michigan for 50 years. He attended the University of Detroit Dental School, and he holds staff privileges at many Detroit area hospitals. He has held his general dentistry license in Michigan since 1967, and he has been board-certified in oral surgery since 1978. Dr. Wolf also explained that, as part of his practice, he conducts "trauma" surgeries, tumor surgeries, the extraction of teeth, skin grafts, osteotomies, the movement of patients' jaws, and repair of fractures. Dr. Wolf 's testimony also demonstrated his familiarity with the applicable standard of care for an oral surgeon based on his knowledge and experience, and he identified how Dr. Osguthorpe's decisions and procedures failed to comply with the applicable standard of care.

Defendants also argue that Dr. Wolf's testimony was deficient because he did not explicitly testify that his opinions were based on a national standard of care for oral surgeons. However, Dr. Wolf never suggested in his testimony that the standard of care for an oral surgeon in Michigan differed from a national standard. Defendants were free to explore that issue on cross-examination if they thought there were differences between the standard of care in Michigan and a national standard, which Dr. Wolf failed to account for.

In sum, Dr. Wolf's testimony was sufficient to demonstrate that he was familiar with "the recognized standard of practice or care" within the specialty of oral surgery "as reasonably applied in light of the facilities available in the community" as required by MCL 600.2912a(1)(b). Accordingly, the trial court did not err by denying defendants' motion for judgment notwithstanding the verdict on the basis that plaintiff failed to present competent evidence of the applicable standard of care.

## B. PROXIMATE CAUSE

Defendants also argue that the trial court erred by denying their motion for judgment notwithstanding the verdict because plaintiff did not present evidence to satisfy the element of proximate cause. We again disagree.

Proximate cause is a required element of a malpractice claim. *Estate of Horn*, 334 Mich App at 288. "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018). In *Patrick*, this Court explained:

> "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). While the term "proximate cause" is also a term of art for the concept of legal causation, Michigan courts have historically used the term proximate cause "both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation." *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). However, in *Ray*, the Michigan Supreme Court explained that "[a]ll this broader characterization recognizes . . . is that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause

-5-

of those injuries." *Id*. at 63-64 (quotation marks and citation omitted). The *Ray* Court also reiterated that " '[p]roximate cause' has for a hundred years in this state, and elsewhere, been a legal term of art; one's actions cannot be *a* or *the* 'proximate cause' without being both a factual and a legal cause of the plaintiff's injuries." *Id*. at 83. [*Patrick*, 322 Mich App at 616-617.]

Defendants' argument is predicated on their position that the evidence showed that there was a very high likelihood that plaintiff would have experienced the hemorrhaging that occurred during the biopsy procedure regardless of the procedure performed by Dr. Osguthorpe, and therefore, Dr. Osguthorpe's conduct cannot be deemed a proximate cause of plaintiff's injury. The focus of this argument is on factual causation. "Establishing cause in fact requires the plaintiff to 'present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.' " *Id.* at 617, quoting *Weymers*, 454 Mich at 647-648.

Dr. Wolf did agree that even if the more minimally invasive incisional biopsy procedure was the only procedure performed, there was a greater than 50% chance that plaintiff would have experienced a major bleed. Although this testimony demonstrated the risk to plaintiff of a hemorrhage, it is not determinative of the issue of proximate cause. Viewing Dr. Wolf's testimony as a whole, he was very clear that it was his belief that Dr. Osguthorpe's breaches of the standard of care led to the major bleed. In particular, Dr. Wolf testified that the mere location of the AVM was alone concerning and should have caused Dr. Osguthorpe to gather more information before proceeding. Dr. Wolf further opined that there was more than one point during the biopsy procedure that the circumstances were such that Dr. Osguthorpe would have been alerted to the presence of an AVM and should have stopped and reconsidered his actions before proceeding. We agree with the trial court that Dr. Wolf's testimony created a factual issue for the jury whether it was reasonably foreseeable that one of the consequences of proceeding with the biopsy procedure, particularly after the detection of blood in the fluid in plaintiff's mouth, was that a major bleed could indeed occur. Therefore, the trial court did not err by also denying defendants' motion for judgment notwithstanding the verdict on the issue of proximate cause.

## III. REMITTITUR

Defendants next argue that the trial court abused its discretion by denying their motion for remittitur of the jury's verdict. We disagree.

This Court reviews a trial court's decision on a motion for remittitur for an abuse of discretion. *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 30; 930 NW2d 393 (2018). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022).

MCR 2.611 provides, in pertinent part:

**(A) Grounds**.

(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

\* \* \*

(d) A verdict clearly or grossly inadequate or excessive.

\* \* \*

**(E) Remittitur and Additur**.

(1) If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

When reviewing a motion for remittitur, a trial court must view the evidence in the light most favorable to the nonmoving party and determine whether the evidence at trial supports the jury's award. *Diamond v Witherspoon*, 265 Mich App 673, 693; 696 NW2d 770 (2005). The trial court's decision is limited to objectively considering the evidence presented and how the trial was conducted. *Id*. In *Diamond*, *id*. at 694, this Court further explained:

Remittitur is justified when a jury verdict exceeds the highest amount the evidence will support. MCR 2.611(E)(1). When determining whether an award is excessive, a court may consider whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and whether the amount actually awarded is comparable to other awards in similar cases. A verdict should not be set aside simply because the method of computation used by the jury in assessing damages cannot be determined, unless it is not within the range of evidence presented at trial. [Citation omitted.]

See also *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 764; 685 NW2d 391 (2004) (reciting objective factors a court may consider in determining whether a jury's award is supported by the evidence).

The trial court did not abuse its discretion by denying defendants' motion for remittitur. Defendants do not challenge the jury's award of $68,000 for economic damages. They only challenge the awards of $2,681,000 for past and future noneconomic damages, but those awards were reduced to $497,000 under MCL 600.1483. The evidence at trial clearly supports this reduced award.

Plaintiff testified that when he consulted with Dr. Wolf after being discharged from the hospital, Dr. Wolf informed him that the nerves in his jaw were broken, and the sensation in that area may never return. Dr. Wolf gave plaintiff exercises for his jaw, but at the time of trial plaintiff

still could not fully open his jaw. Plaintiff was also still experiencing pulsating neck pain at the time of trial. Before the oral surgery, plaintiff used to play and coach volleyball, but he was no longer able to do that. Plaintiff was sleeping on the couch in his home because he was having trouble walking up the stairs to his bedroom, and he was experiencing insomnia because of the pain in his neck. Plaintiff was also experiencing anxiety and depression, and began seeing a counselor. He stopped going to counseling because he found it difficult to verbalize what he was experiencing to anyone.

Plaintiff's wife, Alisha Webster, testified that plaintiff had difficulty keeping food in his mouth at mealtimes. Webster also testified that plaintiff is no longer able to help her move heavy items or carry his children on his shoulders. Plaintiff had become preoccupied with death and refused to leave his children to spend time with her. Webster testified that she goes on trips by herself because plaintiff "doesn't trust anybody with the kids," or he always wants to bring their children with them. Plaintiff also started experiencing night terrors and was still struggling with this condition at the time of trial

Dr. Wolf testified that he evaluated plaintiff on three occasions, and each time he performed an oral examination. During the last examination on May 11, 2018, plaintiff could not open his mouth, a condition known as trimus. Plaintiff also reported that he was having "problems with keeping his mouth on the left side clear from" food that would gather there, and he was experiencing a loss of feeling along the bottom of his jaw. Dr. Max Kole testified that images from a cerebral angiogram showed that plaintiff had a hypertrophied external carotid artery. Because plaintiff's artery was so enlarged, the decision was made to perform an embolization procedure to attempt to "proximally occlude" the large blood vessel, which meant plugging the vessel with the use of coils.

The evidence of plaintiff's ongoing physical difficulties and limitations, and his significant emotional and mental distress after the oral surgery, necessitating both personal and marital counseling, supports the award for noneconomic damages. Moreover, there is no suggestion in the record that the jury's verdict was the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact." *Diamond*, 265 Mich App at 694.

Furthermore, we disagree with defendants that the trial court applied an incorrect legal standard in reviewing their motion for remittitur by stating that "plaintiff clearly suffered damages for which the jury could award compensation," and by failing to consider whether the amount awarded was supported by the evidence. The trial court's opinion as a whole indicates that it found that plaintiff's testimony regarding damages was supported by the testimony of both Dr. Wolf and Dr. Kole. In particular, the trial court considered Dr. Wolf's testimony concerning plaintiff's multiple physical challenges following the oral surgery, including not being able to keep his mouth clear of food and numbness, and the mental and emotional distress he continued to experience. In any event, because the evidence at trial clearly supports the reduced award of $497,000 for noneconomic damages, the trial court did not abuse its discretion by denying defendants' motion for remittitur.

## IV. CASE EVALUATION SANCTIONS

Defendants also argue that the trial court erred by awarding plaintiff case evaluation sanctions under former MCR 2.403(O), which was amended, effective January 1, 2022, to delete Subrule (O), the provision authorizing case evaluation sanctions. We agree.

A trial court's decision whether to award case evaluation sanctions is reviewed de novo. *RAD Constr, Inc v Davis*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 361177; 363142); slip op at 8; *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 97; 795 NW2d 205 (2010). Likewise, this Court reviews de novo whether a trial court properly interpreted and applied a court rule. *Dairyland Ins Co v Mews*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 359855, 361345, 361348, 361351, 361357); slip op at 8-9 n 8.

The parties participated in case evaluation on December 8, 2020, and the panel awarded $199,000 in favor of plaintiff, which plaintiff accepted and defendants rejected. The trial in this case was held in April 2022. Defendants do not dispute that because the jury's verdict was more favorable to plaintiff than the case evaluation award, plaintiff was entitled to receive case evaluation sanctions under the version of MCR 2.403(O)(1) in effect at the time of case evaluation. However, our Supreme Court amended MCR 2.403, effective January 1, 2022, to delete Subrule (O), the provision authorizing case evaluation sanctions provision. The trial court observed that amended court rules generally apply to pending actions, but it ruled that it had discretion under MCR 1.102 to apply the former version of MCR 2.403(O) because plaintiff proceeded to trial in reliance on the former rule while it was still in effect.

MCR 1.102 provides:

> These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

This principle applies to later amendments to the court rules. *People v Jackson*, 465 Mich 390, 396; 633 NW2d 825 (2001), citing *Reitmeyer v Schultz Equip & Parts Co*, 237 Mich App 332, 337; 602 NW2d 596 (1999); see also 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed), pp 4-5 ("The same principle [contained in MCR 1.102] has been applied to subsequently adopted or amended rules.").

The trial court's determination that it had discretion to apply the former version of MCR 2.403(O) is supported by this Court's decision in *Reitmeyer*, in which this Court stated that "the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue to apply the old rules," such as when application of the new rule would work an injustice on a party. *Reitmeyer*, 237 Mich App at 337 (quotation marks and citation omitted). This Court stated that "an injustice is not present merely because a different result would be reached under the new rules." *Id.* (quotation marks and citation omitted). Instead, "a new court rule would 'work injustice' where a party acts, or fails to act, in reliance on the prior rules and the party's action or

-9-

inaction has consequences under the new rules that were not present under the old rules." *Id.* at 337-338 (quotation marks and citation omitted).

More recently, however, this Court addressed the MCR 2.403 amendment to eliminate case evaluation sanctions in *RAD Constr*, ___ Mich App at ___; slip op at 8-9, and held that the trial court erred by awarding case evaluation sanctions after the effective date of the amendment eliminating case evaluation sanctions. This Court stated:

> The record indicates that the parties engaged in case evaluation during January 2021 and RAD rejected the case evaluation award on February 9, 2021. MCR 2.403 then provided in Subpart (O)(1) that if "a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." This case went to trial and RAD did not obtain a more favorable verdict when the trial court rendered its opinion and order on April 12, 2022, dismissing RAD's claims against Chase Bank, Integrity and Boyd. The trial court entered its orders granting Chase Bank, Integrity and Boyd case evaluation sanctions on September 7, 2022.

> Our Supreme Court amended MCR 2.403 and among other things eliminated Subpart (O). The amendments became effective January 1, 2022. See 508 Mich clxiii. MCR 1.102 requires applying the court rules to all pending cases. Amended court rules apply to pending actions unless there is a reason to apply the old rules. *Reitmeyer*, 237 Mich App at 337. We find no reason to apply the old rule in this case. The provision authorizing case evaluation sanctions having been eliminated, the trial court had no authority to sanction RAD after January 1, 2022. By ordering case evaluation sanctions against RAD, the trial court erred. [*RAD Constr*, ___ Mich App at ___; slip op at 8-9.]

This Court's pronouncement that "the trial court had no authority to sanction RAD after January 1, 2022," *id.* at ___; slip op at 9, could be read as indicating that a trial court is prohibited as a matter of law from applying the former rule to a pending case, and thus has no authority to award case evaluation sanctions after January 1, 2022. Conversely, this Court's statements in *RAD Constr* that amended court rules apply to a pending action "unless there is a reason to apply the old rules" and "[w]e find no reason to apply the old rule in this case," *id.* at ___; slip op at 8, implies that a trial court retains discretion to apply the former rule after January 1, 2022, if there is a reason to do so. However, to the extent that *RAD Constr* can be read as still permitting an award of case evaluation sanctions after January 1, 2022, in an appropriate case, we agree that an award of sanctions was not justified in this case.

The parties do not dispute that after defendants rejected the case evaluation award, subsequent efforts to settle the case before January 1, 2022, were unsuccessful. Defendants assert that they relied on the elimination of case evaluation sanctions in formulating their settlement posture and weighing their potential liability. Similarly, plaintiff asserts that he chose to accept the case evaluation award and subsequently proceed to trial in reliance on his belief that he would be able to obtain case evaluation sanctions under the court rule in effect at the time the parties participated in case evaluation and made their decisions whether to accept or deny the case

evaluation award. The trial court credited plaintiff's decision to proceed to trial in reliance on former MCR 2.403(O) as justification for applying the old rule. However, to avoid application of the general rule that court rule amendments apply to pending actions, it is also necessary to find that application of the new court rule will "work an injustice" on plaintiff. MCR 1.102; *Reitmeyer*, 237 Mich App at 337.

Even if we credit plaintiff's contentions that he accepted the $199,000 case evaluation award and proceeded to trial to avoid potential liability for case evaluation sanctions under the former rule if he did not obtain a more favorable verdict at trial, or that he thereafter proceeded to trial in reliance on the expectation that he would be able to recover case evaluation sanctions if he obtained a more favorable verdict at trial, this does not demonstrate that failure to award sanctions under the amended rule would work an injustice on plaintiff. By proceeding to trial, plaintiff received a verdict more than 2½ times the amount of the case evaluation award that plaintiff was willing to accept. The trial court awarded $169,512.54 in case evaluation sanctions, which represents the additional expense incurred by plaintiff because of defendants' decision to reject the case evaluation award. But plaintiff still ultimately recovered a verdict that was almost $200,000 more than the combined amount of the case evaluation award that plaintiff was willing to accept and the added cost of proceeding to trial. In other words, even though plaintiff may have been willing to accept an award of $199,000 rather than risk going to trial and receiving less, and would have preferred to avoid the added expense of a trial, the consequence of going to trial ultimately worked to plaintiff's financial benefit, even when the added expense of going to trial is considered. Under these circumstances, application of the former rule was not necessary to avoid an injustice to plaintiff. Accordingly, we reverse and vacate the trial court's award of case evaluation sanctions under former MCR 2.403(O).

We affirm the judgment for plaintiff, but reverse and vacate the trial court's award of case evaluation sanctions. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola